881 So.2d 734 (2004)
M.W., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D03-2281.
District Court of Appeal of Florida, Third District.
September 15, 2004.
Sanford Rockowitz, for appellant.
Calianne P. Lantz, for appellee.
Before COPE, GREEN and SHEVIN, JJ.
COPE, J.
M.W. appeals an order adjudicating his three natural daughters dependent. We conclude that the evidence was legally sufficient and affirm the dependency order.

I.
According to the petition for dependency, on July 1, 2001 M.W. was arrested for sexual battery on his stepdaughter, J.G. 1. The petition alleges that M.W. had sexual intercourse with his stepdaughter over a three-year period, beginning when the child was ten years old. As to the criminal charges, M.W. was released on bail and the criminal charges remain pending.
The Department filed a petition for dependency as to the stepdaughter J.G. 1 (also referred to as "the stepdaughter") and M.W.'s natural daughters, J.W. 1, J.W. 2, and J.W. 3 (also referred to as "the natural daughters").[1]
With regard to the stepdaughter, M.W. entered a consent plea to the dependency petition. See Fla. R. Juv. P. 8.520(c). *735 Pursuant to this consent, the stepdaughter was adjudicated dependent as to M.W.
Four days later, the trial court conducted an adjudicatory hearing on the petition for dependency as to M.W.'s natural daughters. They were eight, seven, and three years old at the time of the dependency hearing. M.W. was present at the hearing and represented by counsel, but did not testify.
The trial court received testimony from a psychologist who had evaluated M.W., and took judicial notice of the consent order relating to the stepdaughter. The court entered an order adjudicating the natural daughters dependent as to M.W. The order states, in part:
2. On or about March 24, 2003, the Father, [M.W.] entered a plea of consent to an adjudication of dependency regarding the Children's half sister, [J.G. 1]. The findings of fact made by the Court pursuant to the Father's plea were as follows: "[M.W.], the Father of [J.W. 1, J.W. 2, and J.W. 3] and step-father of [J.G. 1 and J.G. 2] on or about July 1, 2001 was arrested for sexual battery on a minor [J.G. 1] and sexual battery on a familial person under the age of 18 by a person over the age of 18. The Child [J.G. 1] disclosed that her step-father had been having sexual intercourse with her over a three (3) year period. The step-father, [M.W.'s] actions place the Child at risk of harm."
3. The Court took Judicial Notice of said Adjudicatory Order at the request of the Florida Department of Children and Families.
4. Based on the testimony of Edward Sczechowicz, Ph.D., BCF (hereinafter referred to as Dr. Schzechowicz), the Court makes the following findings of fact:
4a. Dr. Schzechowicz testified that [M.W.], during his evaluation, disclosed that his step-daughter, [J.G. 1] had touched him on his genitals and that [M.W.] also stated that "his fingers could have touched her vagina." The Court does not find [M.W.'s] statement to be credible and in fact, found this statement to be demonstrative of [M.W.'s] lack of insight.
4b. Dr. Schzechowicz testified that there would be a high risk of sexual abuse re-occurring if [M.W.] had access to the Child [J.G. 1]. As such, no contact with [J.G. 1] was recommended. Dr. Schzechowicz further recommended that [M.W.] be ordered to attend and successfully complete the Mentally Disordered Sex Offender (MDSO) Program.
4c. Dr. Schzechowicz testified that even though according to the testing [M.W.] had exhibited a low risk of recidivism [as to J.W. 1, J.W. 2, and J.W. 3], there were concerns regarding his psychological functioning and he presented as a psychological[ly] maladjusted individual. [M.W.] showed no remorse and blamed the victim-child for any alleged misconduct. Hence, the risk to the Children [J.W. 1, J.W. 2, and J.W. 3] according to Dr. Schzechowicz, was increased by [M.W.'s] commission of a similar act on another Child, to-wit: [J.G. 1], the Children's half-sister.
5. The Father, [M.W.], entered a plea of consent regarding the Child [J.G. 1]. The Court made findings of fact which included that the Father was arrested and charged with Sexual Battery on a Minor and Sexual Battery on a Familial Person under the Age of Eighteen, to-wit, the Child, [J.G. 1].
6. The Court finds, that based on the totality of the circumstances, and after reviewing the documents admitted into evidence as well as hearing expert testimony *736 on the matter, the risk of imminent sexual abuse to the above captioned Children is increased by the Father [M.W.'s] commission of a similar act on another Child, to-wit, the Children's half-sibling, [J.G. 1], his lack of remorse and his psychological functioning.
It is hereby ORDERED and ADJUDGED that the above captioned Children be adjudicated dependent within the meaning and intent of Florida Statutes Chapter 39.
M.W. has appealed.

II.
M.W. argues that the evidence was legally insufficient to support the dependency order. He argues that his sexual abuse of his stepdaughter is insufficient to support a dependency adjudication as to his natural daughters. He contends that the psychologist's testimony defeats the Department's petition. We disagree.
The Florida Supreme Court has said, "The purpose of a dependency proceeding is not to punish the offending parent but to protect and care for a child who has been neglected, abandoned, or abused." M.F. v. Florida Department of Children and Families, 770 So.2d 1189, 1193 (Fla.2000) (citation omitted); see also § 39.501(2), Fla. Stat. (2002).
In administering the child protection system, "The health and safety of the children served shall be of paramount concern." § 39.001(1)(b)1., Fla. Stat. (2002).
Under the statute, a dependent child includes one who is "at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians." Id. § 39.01(14)(f). In making that determination, the trial court is to look at the totality of the circumstances. M.F., 770 So.2d at 1194.
M.W. relies on the M.F. decision, but that reliance is misplaced. In M.F., the father had sexually abused one of his children, K.F. The father was convicted of sexual battery and imprisoned for fifteen years. K.F. was adjudicated dependent as to the father.
In further proceedings, the trial court found M.F.'s other children dependent, on the theory that the other children were at risk of prospective abuse. Rejecting that rationale for the dependency order, the Florida Supreme Court reasoned that since the father was imprisoned for fifteen years and presumably would have no contact with the children, it would follow that there was no risk of prospective abuse.[2]
The present case differs from M.F. In the present case the father is at liberty on bail and there is thus no physical impediment to his having contact with the children. The remaining children are all younger daughters, who are plainly not old enough to protect themselves.
The M.F. court ruled that an adjudication of dependency based on the fact that a parent has sexually abused one child is a factor which can be considered in deciding whether the remaining children are at prospective risk. Id. The father has admitted to having repeated sexual intercourse with his stepdaughter and an adjudication of dependency as to that child has been entered.
M.W. argues, however, that the following testimony of the psychologist supports his position that the instant order should be reversed:
Q Do you have an opinion regarding whether M.W. is at high risk to re-engage *737 in sexually illegal behavior in the future?
A If you're talking about M.W., and I'm going to make an assumption here that he did engage in the behavior he's charged with, if he actually did this,[3] then if you were to give him unfettered access to the alleged victim in this case, then my opinion is there would be a very high risk to his stepdaughter.
If we're talking about the other children, the signs would indicate that he is not a high risk and if these are his natural children.
Based on both the Static Actuarial and Dynamic Risk Factors.
Q Just so that we can be clear.
Supposing, let's assume that M.W. is found guilty of this offense that he was arrested and charged with. Is there an increased risk for his natural children?
A Of course, ma'am.
Any time someone engages in sexually inappropriate behavior, the likelihood of future behavior increases.
The results of the testing would indicate that the likelihood in terms of his sexually abusing his natural children is below base rates, but it's not zero, by any means.
TR. March 27, 2003, at 19-20 (emphasis added).
M.W. argues that since the psychologist said M.W. is not a high risk to his natural children, it follows that the legal standard for a dependency order has not been satisfied. We disagree.
In deciding whether there is a substantial risk of imminent abuse, the trial court is to examine all of the circumstances. This includes the severity of potential harm as well as the likelihood it will occur.
In this case the risk to be protected against is sexual abuse of minor children. It is among the greatest of harms that can be inflicted on children. It is physical harm which is serious criminal conduct.
Because the nature of the harm is so great, it is intolerable to allow even a low probability that M.W. will sexually abuse the other children. The psychologist here testified that while the danger to the natural children was below base rates, "it's not zero, by any means." (Emphasis added).
As we interpret M.W.'s position, he wants us to rule that the trial court cannot order protective services unless there is reason to believe that, more probably than not, he will sexually abuse his other children. The contention apparently is that if the likelihood is below fifty percent, then the young children must be left to fend for themselves. That analysis is incorrect under the statute and under the M.F. decision.
Quite apart from the psychological evaluation results, in M.W.'s own statements to the psychologist he denied responsibility and blamed the victim. Further, at the time of the proceeding below, treatment in the MDSO program had been recommended, but it is not clear whether treatment had begun. In any event, M.W. had completed no such program. These factors, too, support the conclusion that M.W. cannot be left to his own devices.
The trial court applied the correct legal standard and the dependency order is fully supported by the evidence.
Affirmed.
NOTES
[1] The petition included another stepchild, J.G. 2, not at issue on this appeal.
[2] The dependency order was upheld on other grounds, not pertinent here. See M.F., 770 So.2d at 1194-95.
[3] At the time of the interview, M.W. "basically denied having inappropriate sexual contact with his stepdaughter." TR. March 27, 2003, at 13. By the time of the hearing, however, M.W. had admitted (for purposes of the dependency proceeding) that he had engaged in the charged conduct.