935 So.2d 621 (2006)
T.P., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D05-1508.
District Court of Appeal of Florida, Third District.
August 9, 2006.
*622 Karl E. Hall, Jr., Miami, for appellant.
Guardian Ad Litem Program and Hillary S. Kambour, for appellee.
Before GREEN, RAMIREZ, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
The father, T.P., appeals from a final judgment terminating his parental rights to his daughter, Z.K.P. We affirm.
T.P. is the father of a girl, Z.K.P, and twin babies, Z.K.G. and Z.K.G. (the "twins"). The twins, one of whom is a male and the other a female, were five weeks old and Z.K.P. was two and a half years old at the time they came into the custody of the Department of Children and Family Services ("DCF").
In May 2003, the twins were examined at a hospital for a variety of physical abuse symptoms. The father was arrested and charged with two counts of aggravated child abuse. Thereafter, DCF filed a termination of parental rights petition against the father.[1]
*623 During the father's termination of parental rights trial,[2] Dr. Walter Lambert ("Dr. Lambert"), the Medical Director of the Child Protection Team for Miami-Dade and Monroe Counties at the University of Miami Department of Pediatrics, testified as to the injuries suffered by the twins as a result of "severe child abuse." According to Dr. Lambert's testimony, the male twin sustained a large fracture on the left side of his head, which resulted in brain swelling. The injuries caused him to be "profoundly developmentally delayed," and resulted in "cortical blindness." Dr. Lambert also testified that the male twin's head injury was an "impact injury" from "blunt trauma to the head," and that an injury of this type was consistent with an injury that may result from an infant's head being hit against a piece of wood or thrown against the floor. The male twin also sustained fractures to multiple ribs and both of his femurs.
With respect to the female twin, Dr. Lambert testified that she suffered three episodes of child abuse, in which she sustained fractures to multiple ribs and both of her femurs, injuries to her liver and left lung, as well as facial bruising. Dr. Lambert opined that both twins' rib fractures were either a result of being squeezed between two hands or direct impact blows to the ribs. As for the twins' femur fractures, Dr. Lambert opined that such fractures could occur by shaking a child, or by pulling and yanking his/her thighs.
A recorded statement by the father, given to Detective Jackson, was also admitted into evidence. In explaining to Detective Jackson how the male twin's injuries occurred, the father stated that he grabbed the male twin under the armpits and shook him in an attempt to stop him from crying. Then, the father shook him again, walked over to the bassinet, and "dropped" the male twin from the distance of his waist into the bassinet. The father was uncertain as to whether the male twin hit his head on the wood that was inside or on the sides of the bassinet. The father stated that he also shook the female twin to stop her from crying. He further stated that he shook the twins multiple times while they were sleeping to make sure that they were still alive. In describing to Detective Jackson how he shook the twins, the father stated, "[w]hen I didn't hear from them at first, I grabbed them, I shake them up, and their little body weaving, that's when they start the crying. I'm like okay, well I know that they're okay."
The Guardian ad Litem ("Guardian") was also a witness at the trial. The Guardian testified that the male twin was blind, both twins required physical therapy, and the male twin also required occupational therapy. With respect to Z.K.P, the Guardian testified that Z.K.P. was not harmed by the father and did not sustain any injuries. However, Z.K.P. "would get into hysterics" when the twins would leave for supervised visits with family members. The Guardian also testified that, although Z.K.P. loved her father, she had stopped asking about him and had no bond with him.
The trial court entered a final order terminating the father's parental rights as to all three children. The trial court concluded that the child abuse incidents committed by the father constituted egregious abuse and established a prospective risk of harm to all of the children. The trial court further concluded that it was in the manifest best interest of the children to terminate *624 the father's parental rights, and that there were no less restrictive means to protect the children.
The father only challenges the final judgment terminating his parental rights as to Z.K.P. He does not challenge the termination of his parental rights as to the twins.
The father contends that the trial court's order terminating his parental rights as to Z.K.P. should be reversed because the trial court erroneously concluded that a finding of egregious abuse as to the twins under section 39.806(1)(f), Florida Statutes (2005), was sufficient to support a finding of prospective abuse as to the unharmed child, Z.K.P.
The standard of review for challenges to the sufficiency of the evidence supporting a termination of parental rights is whether the trial court's order is supported by substantial competent evidence. See In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995); F.A.F. v. Dep't of Children & Family Servs., 804 So.2d 616, 617 (Fla. 3d DCA 2002).
We recognize "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child." Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla.1991). Accordingly, to protect the rights of the parents and children, the state bears the burden of showing "by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." Id. at 571; see also Fla. Dep't of Children & Families v. F.L., 880 So.2d 602, 608 (Fla.2004). The state must also establish that the termination of parental rights "is the least restrictive means of protecting the child from serious harm." Padgett, 577 So.2d at 571; F.L., 880 So.2d at 608; In re L.C., 908 So.2d 568, 571 (Fla. 2d DCA 2005); In re K.A., 880 So.2d 705, 706 (Fla. 2d DCA 2004). In determining whether terminating a parent's rights is the least restrictive means of protecting the child, the trial court must base its decision on the totality of the circumstances. F.L., 880 So.2d at 608.
Although parental rights are fundamental, we emphasize that they are not absolute, as they are subject to the overriding principle that the best interests of the children must prevail. F.L., 880 So.2d at 608; Padgett, 577 So.2d at 571. As stated by the Florida Supreme Court:
While the parent's interest in maintaining parental ties is essential, the child's entitlement to an environment free of physical and emotional violence at the hands of his or her most trusted caretaker is more so. The state has a compelling interest in protecting all its citizens especially its youthagainst the clear threat of abuse, neglect and death.
Padgett, 577 So.2d at 570.
Section 39.806(1)(f) provides a mechanism for protecting children from the threat of abuse. Section 39.806(1)(f) permits the trial court to terminate parental rights to a child who has suffered egregious abuse, and to any siblings of such child. § 39.806(1)(f), Fla. Stat. (2005); K.A., 880 So.2d at 709. Section 39.806(1)(f) provides, in relevant part:
(1) The department, the guardian ad litem, or any person who has knowledge of the facts alleged or who is informed of those facts and believes that they are true may petition for the termination of parental rights under any of the following circumstances:
...
(f) When the parent or parents engaged in egregious conduct or had the opportunity and capability to prevent *625 and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling.

§ 39.806(1)(f), Fla. Stat. (2005) (emphasis added).
Under section 39.806(1)(f), egregious abuse directed at one sibling is sufficient, without more, to support termination of parental rights to another sibling. Dep't of Children & Families v. B.B., 824 So.2d 1000, 1007 (Fla. 5th DCA 2002)(citing In the Interest of B.S., 697 So.2d 914 (Fla. 2d DCA 1997)). Section 39.806(1)(f) "represents a legislative expression that parents who have committed egregious acts of abuse against one child pose an unacceptable risk that they will abuse their remaining children." Id. The statute does not require additional proof to establish a likelihood that an abused child's sibling will also be abused. Id. Furthermore, in some cases, a parent's conduct toward one child may demonstrate a "substantial risk of significant harm" to another child. F.L., 880 So.2d at 608.
Based on the totality of the circumstances, we find that there was substantial competent evidence to support the trial court's findings. The child abuse incidents committed by the father constituted egregious abuse as to the twins and established a prospective risk of harm to all of the children, including Z.K.P. The trial court heard the testimony of Dr. Lambert that the father committed severe child abuse on the five-week old twins, resulting in multiple injuries to both twins, and developmental delay and cortical blindness to the male twin. The egregious abuse on the twins was sufficient, standing alone, to terminate the father's rights as to Z.K.P., and serves as a basis to uphold the trial court's decision. See B.B., 824 So.2d at 1007; F.L., 880 So.2d at 608.
Moreover, it is undisputed that Z.K.P. was present in the home at the time the father committed the egregious abuse on the twins, and that she became hysterical when the twins were separated from her to attend supervised family visits. Finally, the father's statements regarding how he shook the infant twins showed a lack of regard to their well-being, which supports a finding that he poses a substantial risk of significant harm to Z.K.P. See, e.g., M.W. v. Dep't of Children & Family Servs., 881 So.2d 734, 737 (Fla. 3d DCA 2004) (holding that the father's statements denying responsibility for abuse on his stepdaughter were further evidence to support the trial court's conclusion that the father posed a risk of potential harm to his natural children).
The trial court's determination that it was in the manifest best interest of the children to terminate the father's parental rights, and that there were no less restrictive means to protect the children, is supported by substantial competent evidence. Accordingly, we affirm the termination of the father's parental rights as to Z.K.P.
Affirmed.
RAMIREZ, J., concurs.
GREEN, J. (specially concurring).
On this appeal from a final judgment terminating his parental rights, the issue of whether the evidence was sufficient to support a finding of prospective abuse as to the unharmed child, Z.K.P., was waived and is not properly before this court where the appellant father failed to specifically raise the same in his motion for judgment of dismissal at the conclusion of DCF's case. See J.D. v. Dept. of Children and Fams., 825 So.2d 447 (Fla. 1st DCA 2002). Moreover, the father's challenge to the insufficiency of the evidence does not rise *626 to the level of fundamental error so as to permit him to raise it for the first time on appeal. See F.B. v. State, 852 So.2d 226, 229-30 (Fla.2003) ("rarely will an error be deemed fundamental, and the more general rule requiring a contemporaneous objection to preserve an issue for appellate review will usually apply. We find that the interests of justice are better served by applying this general rule to challenges to the sufficiency of the evidence."). I would therefore affirm the final judgment under review for this reason alone.
NOTES
[1] The petition alleged failure to protect as to the children's mother. However, the mother consented to a dependency determination and was reunified with the children.
[2] The father remained incarcerated throughout the trial proceedings. At oral argument before this court, counsel for the father stated that the father is currently serving a prison sentence of twenty five (25) years to life.