LAGOA, J.
The father, Y.P., appeals an order adjudicating his minor children dependent, and asserts that there was no competent, substantial evidence to support the adjudication. Because we find that the evidence was sufficient to establish by a preponderance of the evidence that the children were in substantial risk of imminent threat of harm, abuse, or neglect, we affirm.
As a result of alleged domestic abuse between Y.P. and the children’s mother, R.V., the Department of Children and Family Services (“the Department”) removed the children from the home. Pursuant to a Custody Release Order, the trial court placed the children with family friends and granted Y.P. and R.V. supervised visitation. Following an adjudicatory hearing, the trial court found that the Department established by a preponderance of the evidence that the children were “under substantial risk of imminent threat of harm or abuse and neglect, within the meaning and intent of Chapter 39, Florida Statutes,” and adjudicated the minor children dependent as to both Y.P. and R.V.[1]
In a dependency proceeding, the Department has the burden to prove its allegations by a preponderance of the evidence. R.F. v. Fla. Dep’t of Children & Families, 770 So.2d 1189, 1192 (Fla.2000). We review an adjudication of dependency for an abuse of discretion, and will uphold the determination if the trial court applied the correct law and its ruling is supported by competent, substantial evidence. M.F., 770 So.2d at 1192; D.R. v. Dep’t of Children & Family Servs., 898 So.2d 254, 255 (Fla. 3d DCA 2005); In re J.A.H., 876 So.2d 647, 648 (Fla. 2d DCA 2004). Weighing the evidence is the province of the trial court, M.R. v. Dep’t of Children & *1120 Family Sens., 788 So.2d 277, 278 (Fla. 3d DCA 2001), and this Court will not disturb the trial court’s credibility findings. “In the event the evidence is conflicting or turns on credibility of the witnesses, all credence and presumption of correctness must be given to the trial court.” F.R. v. Dep’t of Children & Families, 826 So.2d 449, 450 (Fla. 5th DCA 2002).
Chapter 39, Florida Statutes, seeks to guarantee each child in Florida a safe and supportive home environment and to preserve the family unit whenever possible. To this end, section 39.501(2), Florida Statutes (2005), provides that “[t]he purpose of a petition seeking the adjudication of a child as a dependent child is the protection of the child and not the punishment of the person creating the condition of dependency.” See also M.W. v. Dep’t of Children & Family Sens., 881 So.2d 734, 736 (Fla. 3d DCA 2004).
In the instant case, the Department filed a Petition for Dependency alleging that the parents had abused and/or neglected the minor children, and/or would prospectively abuse and/or neglect the children, so as to cause their physical, mental, and/or emotional health to be significantly impaired. As to Y.P., the Department alleged that Y.P. exhibited violent outbursts and rages when angered, and engaged in acts of domestic violence against R.V. in the presence of the children.
At the adjudicatory hearing, the trial court heard testimony from Y.P., R.V., and two Child Protective Investigators. Y.P. testified that he sometimes broke things when he became upset, including breaking chairs and punching a hole in the wall in his home. Y.P. acknowledged that the children were in the home, although not in the same room, during these incidents. Y.P. also admitted that while Child Protective Investigator, Serena Stewart (“Stewart”), was at his home to interview him, he punched the wall of his trailer after learning that he could not accompany his wife and children to their interviews with the Department. Y.P. was offered, but declined, the following services: daycare, a safety plan for the children, anger management, and family counseling.
Stewart testified that when she visited the home, she noticed that the kitchen sink and counters were missing, leaving exposed piping. The kitchen and living room of the trailer ran together and were located very close to the bedrooms. During this visit, Y.P. told Stewart that he had torn out the sink and counter when he was upset, and that he would move to another country where he could beat his wife and his kids when he wanted to, and even kill his wife if he decided to do so.
Subsequent to Stewart’s visit, Y.P. escorted R.V. and the children to the Department’s office. While in the waiting area, Y.P. became violent and began using racial slurs when he was not allowed to be present during the interviews of R.V. or the children. The police were called, and it was only after the police arrived that Y.P. permitted his wife and children to be escorted by the police out of the waiting room and into the Department’s office.
During her interview, R.V. admitted that Y.P had hit her with a stick, and that she fled with the children to a shelter following the incident. R.V. was offered a shelter with her children but declined, telling the Department investigators that she could not leave her husband. R.V. also refused any services offered by the Department.
Based on the evidence presented, the trial court found that Y.P. hit R.V. with a stick after she attempted to stop Y.P. from hitting their children and that R.V. and the children sought shelter following this incident. The trial court also found that Y.P. had an anger control problem that includ *1121 ed a history of breaking things while the children were present in the home and engaging in verbally abusive behavior toward Department staff after learning that he could not be present during the Department’s interviews with the mother and children. The trial court further found that Y.P.’s past criminal conviction interfered with his ability to care for the children and placed them at risk of significant impairment. Finally, the trial court also noted that the parents rejected any services from the Department.
Based on these findings, the trial court entered an Order adjudicating the children dependent as to Y.P., finding that “[t]he Department has proven by a preponderance of the evidence that the [minor] children are under substantial risk of imminent threat of harm[2] or abuse[3] and neglect[4], within the meaning and intent of Chapter 39, Florida Statutes, which is likely to cause the children’s physical, emotional or mental health to be significantly impaired.” The trial court further found that Y.P. had “physically and emotionally abused and neglected, and prospectively will emotionally abuse and neglect” the children through “acts of domestic violence against the [m]other [R.V.] in the presence of the [c]hildren.”
On appeal, Y.P. argues that the Department failed to establish that the alleged domestic violence either occurred in the presence of the children or that the children were aware of any domestic violence. We disagree.
Florida courts have consistently held that “presence” extends to an awareness of the domestic violence. See e.g., D.R. v. Dep’t of Children & Family Servs., 898 So.2d 254, 255-56 (Fla. 3d DCA 2005) (affirming dependency adjudication where record reflected a history of domestic violence between the parents while the child was in the home); D.W.G. v. Dep’t of Children & Families, 833 So.2d 238, 242-43 (Fla. 4th DCA 2002) (explaining that children may be aware of domestic violence even if they do not see it).
In the instant case, the record amply supports the trial court’s findings. It is clear from the evidence presented that Y.P. engaged in violent behavior while the children were in the relatively close confines of the home and that Y.P. engaged in violent behavior in front of the children while in the waiting area of the Department’s office. Indeed, the record demonstrates that Y.P prevented the children from entering the Department’s office until the police arrived. Moreover, the aftermath of Y.P.’s behavior was evident long after the rage subsided, ie., a hole in the wall, broken chairs, and a torn kitchen sink and countertop leaving exposed pipes. Finally, the record demonstrates that R.V. fled with the children to a shelter after Y.P hit her with a stick. Accordingly, we af *1122 firm the trial court’s order of dependency as to Y.P., the father.
Affirmed.

. R.V.’s separate appeal was affirmed by this Court. R.V. v. Dep’t of Children & Family Servs., 932 So.2d 205 (Fla. 3d DCA 2006) (table).

. Pursuant to section 39.01(30)(i), Florida Statutes (2005), “harm” can occur when a parent ”[e]ngages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child.”

. Pursuant to section 39.01(2), Florida Statutes (2005), "abuse” is defined as including "any willful act or threatened act that results in any physical, mental or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired.”

.Pursuant to section 39.01(45), Florida Statutes (2005), " '[njeglect’ occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.... Neglect of a child includes acts or omissions.”