LAWSON, C.J.
Tommie L. Andrews appeals from the denial of his amended petition for release from civil commitment pursuant to the Civil Commitment of Sexually Violent Predators Act (the Jimmy Ryce Act), sections 394.910-.931, Florida Statutes. As his sole issue on appeal, Andrews argues that the trial judge erred in considering testimony from the State’s two experts over his objection that their opinions did not meet the Daubert[1] standard by which the admissibility of scientific evidence is now judged in Florida’s courts. Ch. 2013-107, Laws of Fla. (2013); see also Giaimo v. Fla. Autosport, Inc., 154 So.3d 385, 387-88 (Fla. 1st DCA 2014) (addressing Dau-bert test and outlining Florida’s adoption of that standard). We review a trial court’s determination on the admissibility of expert testimony for abuse of discretion. Johnson v. State, 393 So.2d 1069, 1072 (Fla.1980). Finding no abuse of discretion, we affirm.
The trial judge in this ease thoroughly analyzed the admissibility of the challenged testimony under Daubert in his written order, explaining:
Prior to trial, Andrews filed a motion in limine seeking to prohibit the testimony of the two State expert witnesses— Drs. Amy Swan and Peter Bursten— pursuant to the principles set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court deferred ruling on the motion until after the testimony of the experts had been presented at trial. The matter is now ripe for decision.
Prior to July 1, 2013, Florida courts, in dealing with the admissibility of expert testimony, applied the “general acceptance test” set forth in Frye v. United States, 293 F. 1013 (D.C.Cir.1923). However, beginning July 1, 2013, the Florida Legislature amended sections 90.702 and 90.704 of the Florida Evidence Code, which replaced the Frye “general acceptance test” with the standards set forth in Daubert. Under Frye, pure opinion was admissible as an exception. Since July 1, 2013, pure opinion testimony is subject to a Daubert analysis.
In the instant case, Andrews argues that “the evidence/testimony [of the State’s experts] is so unreliable and unscientific as to be inadmissible because it will not serve the purpose of assisting the Court, and will be highly prejudicial, exceeding any probative value it may have.” (See Andrews’ Motion in Limine 2). Andrews goes on to argue that the testimony of Drs. Swan and Bursten amount “to only opinion testimony, which is not based on sufficient facts or evidence, nor are they the product of reliable principles and methods, nor do they show the application of applied principles and methods reliably to the facts of the case.” (See Andrews’ Motion in Limine 9).
The parties, here recognize that all of the experts in this matter are forensic psychologists. Indeed, the probable cause determination that led to the trial at issue was based on the report of Dr. Karen Parker, a forensic psychologist, who testified at trial for Andrews. *528 Thus,, the Daubert analysis must occur within the discipline which is employed in cases of this type.
Other courts have recognized that “the Daubert factors do not necessarily apply easily when considering the testimony of a mental health expert.” Frye v. Warden, San Quentin State Prison, 2010 WL 3210767 *3 (E.D.Cal. Aug. 10, 2010); see also Blanchard v. Eli Lilly & Co., 207 F.Supp.2d 308, 316-17 (D.Vt.2002) (citing C. Robert Showalter, Distinguishing Science from, Psuedo-Science in Psychiatry: Expert Testimony in the Post-Daubert Era, 2 Va. J. Soc. Pol’y & L. 211, 235-37 (1995) for the proposition that “much scientific data, including that derived from behavioral science analyses , of both aggregate data and individuals undergoing psychiatric or psychological evaluation, simply cannot be measured by the Daubert standards”). This is so because “in a field like psychiatry ... methodologies are not.readily subject to the kind,of objective scientific verification the Supreme Court called for in Daubert.” Lindh v. Murphy, 96 F.3d 856, 884 (7th Cir.1996) (Wood, J., concurring in part and dissenting in part), rev’d on other grounds, [521 U.S. 320, 117 S.Ct 2059, 138 L.Ed.2d 481 (1997)]; see also Blanchard, 207 F.Supp.2d at 316 (“The reliability. of expert opinion based on psychiatric or psychological observation and analysis does not readily lend itself to evaluation using the specific Daubert factors.”) (citations omitted). See also Samaniego v. City of Kodiak, 80 P.3d 216 (Alaska 2003).
However, while courts seem to be in agreement that psychiatric and' psychological expert opinions are difficult to analyze under Daubert, there also seems to be agreement that these opinions can be admitted because Daubert employs a flexible approach. See Jenson v. Evel-eth Taconite Co.,. 130 F.3d 1287, 1297 (8th Cir.1997) (indicating that it was difficult to analyze psychological testimony under Daubert, but ultimately admitted the testimony because of Daubert’s flexible approach). Rather,
The Court’s task [under Daubert] is not to apply a rigid checklist to proposed opinion testimony, but to determine if it is based upon sufficient facts or data and is the product of reliable principles and methods, and if the principles and methods have been applied reliably to the facts of the case.
Blanchard, 207 F.Supp.2d at 317. This interpretation is also reflected in the Supreme Court’s analysis of Daubert, when it stated that “a trial court may consider one or more of the more specific factors that Daubert mentioned when doing so will help determine that testimony’s reliability.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (emphasis in original). The emphasis on the word “may” reflects Daubert’s description of the Rule 702 inquiry as a “flexible” one. Id.; see also id. at 150 (“Daubert makes clear that the factors it mentions do not constitute,a definitive checklist • or test _ [and] that. the gatekeeping inquiry must be tied to the facts of a particular case.” (internal citations and quotations omitted)).
Here, there was no dispute about the qualifications of Drs. Swan and Bursten as forensic psychologists experienced in the evaluation of sex offenders. Prior to testifying in the instant case, both Dr. Swan and' Dr. Bursten have been qualified in court as experts able to opine on the anticipated future behavior of sex offenders. The Court notes that Andrews’ experts were also qualified in the field.
*529 In reaching their opinions regarding Andrews, Drs. Swan and Bursten relied on the following: (1) a review of Andrews’ records, including factual information regarding the cases for which Andrews was charged and convicted; (2) clinical interview(s); (3) review of the DSM-V; and (4) behavioral observations and mental status examination. It is true that the opinions reached by Drs. Swan and Bursten differed from those of Andrews’ experts, Drs. Parker and De-Clue, but it is also true that experts in the field of forensic psychology generally use the same data inputs to formulate their conclusions. Indeed, Dr. Parker utilized the same types of data in rendering .her probable cause opinion, which resulted in the instant trial. .
In light of the flexible approach of applying mental health expert testimony to Daubert, it appears that both Dr. Swan and Dr. Bursten used an appropriate basis, one that is customary in the field of evaluating sex offenders, on which they based their ultimate conclusions. See Frye, 2010 WL 3210767 at *5 (stating that the “objective of Daubert’s gatekeeping requirement is to make certain an expert, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field” (citing Kumho Tire, 526 U.S. at 152, 119 S.Ct. 1167) (internal quotations omitted)); see also Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir.1997) (explaining that Daubert requires the trial judge to be satisfied that the expert “is being as. careful as he would be in his professional work outside his paid litigation consulting”). Both doctors reviewed Andrews’ past evaluations, the information regarding his arrests and convictions, DOC and Commitment Center records, and results of recent clinical interviews of Andrews. Thus, the Court finds that both doctors relied on the regular and customary methodology that mental health professionals would typically utilize in forming their opinions in sex offender cases, and further finds that the opinions of Drs. Swan and Bursten pass the scrutiny of the Daubert analysis.
(some citations altered as to format).
We commend Judge Mihok for his thorough and accurate analysis of the eviden-tiary issue before him. Finding no abuse of discretion in the trial court’s admission of the challenged testimony, we affirm.
AFFIRMED.
COHEN-and BERGER, JJ., concur.

. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).