# Third District Court of Appeal

## State of Florida

Opinion filed January 25, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2108
Lower Tribunal No. 12-15015
_____

**E.Q., the Mother,**
Appellant,

vs.

**Florida Department of Children & Families, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Kevin Coyle Colbert, Assistant Regional Counsel, Third Region, for appellant.

Laura J. Lee (Sanford), for appellee the Guardian ad Litem Program; and Karla Perkins, for appellee the Florida Department of Children & Families.

Before ROTHENBERG, LAGOA, and SCALES, JJ.

ROTHENBERG, J.

In this appeal, there are two orders before this Court: (1) the final judgment terminating E.Q.'s ("the Mother")[1] parental rights to her minor daughters N.Q. and S.Q. ("the children"); and (2) the order denying the Mother's counsel's motion to transfer custody of the children to the paternal grandparents ("the motion to transfer").[2] Because the Mother has not challenged the trial court's findings terminating her parental rights and those findings are supported by competent substantial evidence, we affirm the final judgment terminating the Mother's parental rights without further elaboration.

We now address the order denying the motion to transfer. On or about January 12, 2012, the Department of Children and Families ("DCF") took the children into custody due to the parents' abuse, abandonment, and/or neglect of the children, and the children were placed in a DCF shelter. Later that month, the children were placed with pre-adoptive foster parents, where they have remained and have thrived under their care.

On November 5, 2014, while the parents' parental rights were still intact, the attorney representing the Mother filed a motion to transfer the custody of the children from the pre-adoptive foster home they had resided in since January 2012,

---

[1] Although the Father's parental rights were also terminated, this appeal only addresses the termination of the Mother's parental rights.

[2] The order is actually worded as follows: Order Denying Adoption Entity's Motion to Transfer Custody of the Minor Children [N.Q.] AND [S.Q.], to the Prospective Adoptive Parents, [the paternal grandparents].

to the custody of the childrens' paternal grandparents. Pursuant to section 63.082(6), Florida Statutes, the attorney representing the Mother was granted leave by the trial court to intervene as an "Adoption Entity/Intermediary Party" and to litigate the motion to transfer.

Section 63.082(6) permits intervention by an "adoption entity" in a dependency case where parental rights have not yet been terminated and a parent has executed a consent for placement of a minor with an adoption entity or qualified prospective adoptive parents. See § 63.082(6)(a-b). Both parents signed consents for adoption by the paternal grandparents, and the attorney representing the Mother filed the transfer motion prior to the termination of either parent's parental rights. The trial court, therefore, had jurisdiction and conducted an evidentiary hearing in accordance with section 63.082(6)(c) to determine whether the prospective adoptive parents (the childrens' paternal grandparents) were properly qualified to adopt the children and whether the adoption appeared to be in the best interest of the children.

Section 63.082(6)(e) lists four factors the court must consider when determining whether the best interest of the child is served by transferring custody of the minor child to the prospective adoptive parent selected by the current parent. These four factors are: (1) the right of the parent to determine an appropriate placement for the child; (2) the permanency offered; (3) the child's bonding with

3

any potential adoptive home that the child has been residing in; and (4) the importance of maintaining sibling relationships, if possible.

After hearing and weighing the evidence, the trial court concluded that the best interest of the children would not have been served by transferring custody of the children to the prospective adoptive parents, the paternal grandparents, selected by the parents. Because weighing the evidence is the province of the trial court, Y.P. v. Dep't of Children & Family Servs., 939 So. 2d 1118, 1119-20 (Fla. 3d DCA 2006); M.R. v. Dep't of Children & Family Servs., 783 So. 2d 277, 278 (Fla. 3d DCA 2001), and there is competent substantial evidence which supports the trial court's findings, we affirm.

The fourth factor, which requires the trial court to consider the importance of maintaining sibling relationships, is not a factor in this case. We, therefore, turn to the remaining three factors. Although parents have a fundamental right to raise their children, and section 63.082(6)(e) provides the parents with the statutory right to select a prospective adoptive parent or parents for the child, that right is not absolute. Padgett v. Dep't of Health & Rehab. Servs., 577 So. 2d 565, 570 (Fla. 1991) (holding that a parent's fundamental right to raise his or her child is "subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail") (citing In re Camm, 294 So. 2d 318, 320 (Fla. 1974)); P.K. v. Dep't of Children & Families, 927 So. 2d 131, 133 (Fla. 5th DCA 2006). Thus,

4

the wishes of the parents are a factor, but those wishes must be considered with the other three factors, which relate to a determination of what is in the best interest of the child.

In considering whether the paternal grandparents were "appropriately qualified" to adopt the children, the trial court considered the age and health of the grandparents. The grandmother was seventy years old and the grandfather was seventy-six years old when the trial court issued its order denying the transfer on or about June 26, 2015. In addition, the grandfather was experiencing several health issues, including diabetes, elevated cholesterol, high blood pressure, and some memory loss. These issues were appropriately considered with regard to the permanency prong of the evaluation. In June 2015, the oldest child was eight years old and the youngest child was seven years old.

More important to the trial court, however, was the bonding factor. The trial court noted that the children had resided in a stable placement with their pre-adoptive foster parents since January 2012. In the final judgment terminating the parents' parental rights, the trial court considered the emotional bond the children had with their foster parents, the children's desires to remain with their foster parents, and the fact that this placement was a pre-adoptive home placement. The trial court noted in the final judgment terminating parental rights that the children call the foster parents "mommy" and "papi" and that there exists a parent-child

5

relationship between the children and the foster parents.  In contrast, the trial court found that the children have had no meaningful contact with the paternal grandparents since before they were placed in foster care in 2012, and that the children would suffer substantial and irreparable harm if they were uprooted and transferred to the custody of the paternal grandparents.  This finding was supported and echoed by the Guardian ad Litem, an unbiased advocate for the best interest of the children, and DCF.

In Guardian ad Litem Program v. R.A., 995 So. 2d 1083 (Fla. 5th DCA 2008), the father had moved to transfer the placement of his daughter from the pre-adoptive home of the foster parents to the home of the child's paternal grandparents.  The trial court granted the motion and the Fifth District Court of Appeal issued a writ of certiorari and quashed the order based on the trial court's failure to make a determination, based on the evidence presented, that a change of placement was in the child's best interest.  The Fifth District Court of Appeal specifically noted that pursuant to section 39.582(1), Florida Statutes, the standard for ordering a change in the placement of a dependent child is the child's best interest, and that:

> [S]ection 39.521(1)(d)8.b., Florida Statutes, expressly provides that when "no suitable relative is found and the child is placed with the department or a legal custodian" in the first instance, "neither the department nor the court is obligated to" later place the child with a relative "if it is in the child's best interest to remain in the current placement."

Id. at 1084.

It is therefore clear that when considering a motion by a parent to transfer a dependent child, who has been placed with the department or a legal custodian, to a relative, the trial court must consider the wishes of the parent or parents, if their parental rights have not been terminated, and weigh those wishes with the other three factors articulated in section 63.082(6), which relate to the best interests of the child. The trial court followed this statutory directive and entered an order with factual findings. Because weighing the evidence is the province of the trial court, Y.P., 939 So. 2d at 1119-1120, and there is competent substantial evidence to support the trial court's findings, we affirm.

Affirmed.