DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES WALSH, ATTORNEY AD LITEM,** on behalf of A.K.P.,
a minor child, and **STATEWIDE GUARDIAN AD LITEM OFFICE,**
Appellants,

v.

**DEPARTMENT OF CHILDREN & FAMILIES,** et al.,
Appellees.

Nos. 4D2023-2009 and 4D2023-2092

[September 4, 2024]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Melanie Surber, Judge; L.T. Case No. 502021DP000060.

James Walsh of Foster Children's Project & Juvenile Advocacy Project, Legal Aid Society of Palm Beach County, West Palm Beach, for appellant James Walsh, Attorney ad Litem, on behalf of A.K.P.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, Appellate Division, Statewide Guardian ad Litem Office, Tallahassee, for appellee Statewide Guardian ad Litem Office.

Ellen Kaplan of The Law Offices of Ellen M. Kaplan, P.A., Coral Springs, for Adoption Entity and Adoptive Parent.

WARNER, J.

In *M.K. v. Department of Children & Families*, 380 So. 3d 469 (Fla. 4th DCA 2023), we held that a foster mother did not have party status in an Adoption Entity's section 63.082(6) intervention proceeding regarding the child's custody placement and best interests. *Id.* at 471. In that opinion, we noted that the Legislature in 2023 made significant amendments to section 63.082(6) designed to provide greater protections for the best interest of the child. *Id.* at 473. Because the foster parent was denied party status prior to the amendment's effective date, we did not apply the amendments to the appeal. *Id.* at 474.

The trial court reopened the placement proceedings after the effective date but refused to apply the amendments. We now hold that the court erred in failing to apply the amended version of section 63.082 to the best interest hearing and reverse.

We state the facts as contained in *M.K.*:

> The child in this proceeding was born in November 2020, suffering from withdrawal symptoms due to the mother's drug abuse. This prompted the Department of Children & Families to file a shelter petition and then a petition for dependency against the parents. The trial court granted both petitions. The Department placed the child with appellant M.K., who has been the child's foster mother since January 2021. After the parents failed at case plan requirements and other issues, the Department, Guardian ad Litem [("GAL")], and the Attorney ad litem [("AAL")] for the child filed a joint petition in April of 2022 to terminate the parents' parental rights. The petition alleged that the child was bonded to the foster mother who was willing to adopt the child.

> On the day of the father's TPR hearing, in October of 2022, the father filed a waiver of his rights to, and custody of, the child, and consented to his relative, A.S.L., adopting the child. The mother's rights had already been terminated by constructive consent. The father's relative, A.S.L., filed a motion to intervene as a party in the dependency case based on section 63.082, Florida Statutes (2022). The first motion was legally insufficient, but a revised motion with the proper information was filed. Shortly thereafter, M.K. filed a petition to terminate the parents' parental rights.

> New counsel, acting as Adoption Entity petitioners, filed a motion to intervene as an Adoption Entity and party of interest under section 63.082(6), a motion to stay the TPR proceedings, and an order setting a "best interest hearing," pending termination of the father's parental rights and A.S.L.'s adoption of the child. M.K. filed a response in opposition to the motion to stay the TPR, arguing that she had party status to object as a petitioner in her TPR petition. Alternatively, M.K. moved the court, pursuant to Florida Family Law Rule of Procedure 12.230, to permit her to intervene in the Adoption Entity's section 63.082(6) proceeding.

2

> After a hearing, the trial court granted the Adoption Entity's motion to intervene and rejected M.K.'s claim of party status in the proceedings.

*Id.* at 471.

M.K. appealed in March 2023. During the pendency of the appeal, the trial court heard evidence as to whether a change of placement from M.K. to A.S.L. would be in the child's best interest, including testimony from A.S.L., M.K., and bonding and attachment experts. The court permitted written closing arguments and did not rule on the record.

On June 27, 2023, before the trial court ruled, the AAL moved to reopen the evidence based upon the child's recent diagnosis with autism spectrum disorder to determine how this affected his best interests. The following day, June 28, 2023, the court granted the motion to modify custody to A.S.L. applying the best interest factors in the 2022 version of section 63.082(6) and at the same time stayed the order pending a hearing on the motion to reopen the evidence. A few days later, on July 1, 2023, amendments to section 63.082 went into effect.

On July 24, 2023, the court reopened the evidence and heard testimony from experts as to the child's condition. The AAL and M.K. both argued that the new statutory amendments should apply, which provided, among other changes, that for a child who is in a current placement for prospective adoption for at least nine months (which this child was), a rebuttable presumption exists that it is in the child's best interest to remain in that placement. § 63.082(6)(e), Fla. Stat. (2023). To rebut that presumption, the intervening adoption entity must prove by clear and convincing evidence that it is in the child's best interests to disrupt that placement. *Id.* The trial court declined to apply the amended version of section 63.082 retroactively to the reopened proceedings because it concluded the amendments created substantive rights. The court then granted the motion to change custody of the child to A.S.L.

The AAL and the GAL both appeal the court's ruling, each asserting that the court erred by failing to apply the amended version of section 63.082.[1]

---

[1] The Department filed a notice asserting that, as the Department had opposed the Adoption Entity's motion at trial, it would not take a different position on appeal, and noted the GAL had filed an initial brief.

**Analysis**

We first address the basis for our jurisdiction in this case.[2]   A disagreement exists among the districts as to whether an order changing placement is appealable or should be the subject of a petition for writ of certiorari.  While we originally designated this as a nonfinal appeal, there is no authority pursuant to Florida Rule of Appellate Procedure 9.130 for review of nonfinal placement orders in dependency.  *See, e.g., Guardian Ad Litem Program v. Dep't of Child. & Fams.*, 972 So. 2d 871, 871 (Fla. 4th DCA 2007) ("Rule 9.130(a)(3)(C)(iii), which allows for appeals from orders determining custody in family law matters, does not encompass non-final orders in termination and dependency proceedings.").  This Court and the First District have reviewed orders modifying custody pursuant to section 63.082(6) as final appeals.  *W.K. v. Dep't of Child. & Fams.*, 230 So. 3d 905, 907 (Fla. 4th DCA 2017); *M.A. v. Dep't of Child. & Fams.*, 906 So. 2d 1226 (Fla. 1st DCA 2005).  The Fifth and Second Districts have reviewed these orders by certiorari.  *See, e.g., Int. of K.B.*, 371 So. 3d 975 (Fla. 2d DCA 2023); *Guardian Ad Litem Program v. Campbell*, 348 So. 3d 1177, 1181 (Fla. 5th DCA 2022).  Because of *W.K.*, we treat this as a final appeal.[3]  However, were we to review this as a petition for writ of certiorari, we would hold that the trial court departed from the essential requirements of law in failing to apply the correct law.

We also note that the AAL appealed the original order modifying placement.  But because the trial court stayed the placement order the same day it signed and then reopened the evidence, the first order modifying placement was not final or independently appealable.  We therefore dismiss the appeal in Case No. 4D2023-2009.

Whether a statute is substantive or procedural and whether it can be applied retroactively are questions of law which require de novo review. *See Love v. State*, 286 So. 3d 177, 183 (Fla. 2019).

---

[2] AAL also contends that the trial court did not have subject matter jurisdiction to proceed with the Adoption Entity's motion to modify custody, arguing that the court lost jurisdiction when M.K. appealed the denial of her party status.  We disagree.  The court had the ability to determine the best interest placement of the child.   *See* Fla. R. App. P. 9.146(d) ("**Retention of Jurisdiction.** Transmission of the record to the court does not remove the jurisdiction of the circuit court to conduct judicial reviews or other proceedings related to the health and welfare of the child pending appeal.").

[3] But we note that, as discussed in this opinion, the legal standard for determining a child's placement pursuant to section 63.082(6) has changed substantially since *W.K.*

"[S]ubstantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1358 (Fla. 1994). "Remedial statutes operate to further a remedy or confirm rights that already exist[.]" *Maronda Homes, Inc.. of Fla. v. Lakeview Rsrv. Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1272 (Fla. 2013). Further,

> The rule for procedural/remedial changes, in contrast to the presumption against retroactive application for substantive changes, is as follows:
>
> > *Remedial* statutes or statutes relating to remedies or modes of *procedure*, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.
>
> *City of Lakeland v. Catinella*, 129 So. 2d 133, 136 (Fla. 1961) (emphasis added). Moreover, the "presumption in favor of prospective application generally does not apply to 'remedial' legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose." *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994) (citing *City of Orlando v. Desjardins*, 493 So. 2d 1027 (Fla. 1986)). Finally, a statute that achieves a "remedial purpose by creating substantive new rights or imposing new legal burdens" is treated as a substantive change in the law. *Arrow Air, Inc.*, 645 So. 2d at 424.

*Smiley v. State*, 966 So. 2d 330, 334 (Fla. 2007). A statute is not applied retroactively merely because it is applied to a case arising from conduct that precedes the statute. "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Love*, 286 So. 3d at 187 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994)).

When the dependency action commenced and later when the Adoption Entity sought to intervene, section 63.082 provided as follows:

> (6)(a) If a parent executes a consent for adoption of a minor with an adoption entity or qualified prospective adoptive

5

parents and the minor child is under the supervision of the department, or otherwise subject to the jurisdiction of the dependency court as a result of the entry of a shelter order, a dependency petition, or a petition for termination of parental rights pursuant to chapter 39, but parental rights have not yet been terminated, the adoption consent is valid, binding, and enforceable by the court.

(b) Upon execution of the consent of the parent, the adoption entity shall be permitted to intervene in the dependency case as a party in interest and must provide the court that acquired jurisdiction over the minor, pursuant to the shelter order or dependency petition filed by the department, a copy of the preliminary home study of the prospective adoptive parents and any other evidence of the suitability of the placement.
. . .

(c) If an adoption entity files a motion to intervene in the dependency case in accordance with this chapter, the dependency court shall promptly grant a hearing to determine whether the adoption entity has filed the required documents to be permitted to intervene and whether a change of placement of the child is in the best interests of the child. Absent good cause or mutual agreement of the parties, the final hearing on the motion to intervene and the change of placement of the child must be held within 30 days after the filing of the motion, and a written final order shall be filed within 15 days after the hearing.

**(d) If after consideration of all relevant factors, including those set forth in paragraph (e), the court determines that the prospective adoptive parents are properly qualified to adopt the minor child *and that the adoption is in the best interests of the minor child*, the court shall promptly order** the transfer of custody of the minor child to the prospective adoptive parents, under the supervision of the adoption entity.
. . .

(e) In determining whether the best interests of the child are served by transferring the custody of the minor child to the prospective adoptive parent selected by the parent or adoption entity, the court shall consider and weigh all relevant factors, including, but not limited to:

1. The permanency offered;

2. **The established bonded relationship between the child and the current caregiver in any potential adoptive home in which the child has been residing;**

3. **The stability of the potential adoptive home in which the child has been residing as well as the desirability of maintaining continuity of placement**;

4. The importance of maintaining sibling relationships, if possible;

5. The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient maturity, understanding, and experience to express a preference;

6. Whether a petition for termination of parental rights has been filed pursuant to s. 39.806(1)(f), (g), or (h);

7. **What is best for the child**; and

8. **The right of the parent to determine an appropriate placement for the child.**

§ 63.082, Fla. Stat. (2021, 2022) (emphasis supplied).

In 2023, the Legislature substantially amended these provisions as follows:

(6)(a) 1. The Legislature finds that there is a compelling state interest in ensuring that a child involved in chapter 39 proceedings is served in a way that minimizes his or her trauma, provides safe placement, maintains continuity of bonded placements, and achieves permanency as soon as possible.

2. The Legislature finds that the use of intervention in dependency cases for the purpose of adoption has the potential to be traumatic for a child in the dependency system and that the disruption of a stable and bonded long-term placement by a change of placement to a person or family with whom the child has no bond or connection may create additional trauma.

**3. The Legislature finds that the right of a parent to determine an appropriate placement for a child who has been found dependent is not absolute and must be weighed against other factors that take the child's safety, well-being, and best interests into account.**

**4. It is the intent of the Legislature to reduce the disruption of stable and bonded long-term placements that have been identified as prospective adoptive placements.**

**(b) If a parent executes a consent for adoption of a child with an adoption entity or qualified prospective adoptive parents and the child is under the supervision of the department**, or otherwise subject to the jurisdiction of the dependency court as a result of the entry of a shelter order, a dependency petition, or a petition for termination of parental rights pursuant to chapter 39, **the adoption consent is valid, binding, and enforceable by the court.** For the purposes of this subsection, a consent to adoption of a child with an adoption entity or qualified prospective adoptive parents is valid if executed during the pendency of the chapter 39 proceeding up to and including the 30th day after the filing of the petition for termination of parental rights pursuant to s. 39.802.

(c) Upon execution of the consent of the parent, the adoption entity may file a motion to intervene and change placement of the child in the dependency case as a party in interest and must provide the court that acquired jurisdiction over the child, pursuant to the shelter order or dependency petition filed by the department, a copy of the preliminary home study of the prospective adoptive parents selected by the parent or adoption entity and any other evidence of the suitability of the placement.

(d)1. If an adoption entity files a motion to intervene and change placement of the child in the dependency case in accordance with this chapter, the dependency court must promptly grant an evidentiary hearing to determine whether:

a. The adoption entity has filed the required documents to be allowed to intervene;

8

b. The preliminary home study is adequate and provides the information required to make a best interests determination; and

c. The change of placement of the child is in the best interests of the child.

2. Absent good cause or mutual agreement of the parties, the final hearing on the motion to intervene and change placement of the child must be held within 30 days after the filing of the motion, and a written final order shall be filed within 15 days after the hearing.

(e) **If the child has been in his or her current placement for at least 9 continuous months or 15 of the last 24 months immediately preceding the filing of the motion to intervene, and that placement is a prospective adoptive placement, there is a rebuttable presumption that the placement is stable and that it is in the child's best interests to remain in that current stable placement. The court shall grant party status to the current caregiver who is a prospective adoptive placement for the limited purpose of filing motions and presenting evidence pursuant to this subsection. This limited party status expires upon the issuance of a final order on the motion to intervene and change of placement of the child**. *To rebut the presumption established in this paragraph, the intervening party must prove by clear and convincing evidence that it is in the best interests of the child to disrupt the current stable prospective adoptive placement using the factors set forth in paragraph (f) and any other factors that the court deems relevant.*

(f) At a hearing to determine whether it is in the best interests of a child to change placement to the prospective adoptive parents selected by the parent or adoption entity, the court shall consider and weigh all relevant factors, including, but not limited to:

1. The permanency offered by both the child's current placement and the prospective adoptive placement selected by the parent or adoption entity;

**2. The established bond between the child and the current caregiver with whom the child is residing if that placement is a prospective adoptive placement;**

**3. The stability of the prospective adoptive placement in which the child has been residing, which must be presumed stable if the placement meets the requirements of paragraph (e), as well as the desirability of maintaining continuity of placement**;

4. The importance of maintaining sibling relationships, if possible;

5. The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient maturity, understanding, and experience to express a preference;

6. Whether a petition for termination of parental rights has been filed pursuant to s. 39.806(1)(f), (g), or (h); and

**7. What is best for the child.**

(g) 1. If after consideration of all relevant factors, including those set forth in paragraph (f), the court determines that the home study is adequate and provides the information necessary to make a determination that the prospective adoptive parents are properly qualified to adopt the child and that the change of placement is in the best interests of the child, the court must order the change of placement to the prospective adoptive placement selected by the parent or adoption entity, under the supervision of the adoption entity.

§ 63.082, Fla. Stat. (2023) (emphasis supplied).

The changes to section 63.082 did not create any new legal rights or burdens based upon past conduct. The prior version of section 63.082 and the amendments thereto both focus on the best interest of the child and look to the current condition of the child. While the Adoption Entity contends that the amended version of section 63.082 removes the father's rights to direct his child's adoption, the parent never had an unfettered right under the prior version of section 63.082 to choose the child's adoptive parent. The parent's right to designate an adoptive parent was always circumscribed by the determination of the best interest of the child, and section 63.082 listed multiple factors for the court to consider in

determining the best interest of the child, including the continuity of placement. The parent's right to designate placement was only one of multiple factors for the trial court's consideration. *See E.Q. v. Dep't of Child. & Fams.*, 208 So. 3d 1258, 1260 (Fla. 3d DCA 2017) ("[T]he wishes of the parents are a factor, but those wishes must be considered with the other three [now seven] factors, which relate to a determination of what is in the best interest of the child."). The amended version of section 63.082 merely emphasizes this in the legislative finding that "the right of a parent to determine an appropriate placement for a child who has been found dependent is not absolute and must be weighed against other factors that take the child's safety, well-being, and best interests into account." § 63.082(6)(a)3., Fla. Stat. (2023).

A significant change in the law is the establishment of a rebuttable presumption in favor of a prospective adoptive placement if the child has been in the placement for a lengthy time. That presumption can be overcome by the Adoption Entity proving with clear and convincing evidence that disruption of that placement is in the child's best interest. The rebuttable presumption created in the amended version section 63.082(6)(e) is a presumption "affecting the burden of proof." § 90.304, Fla. Stat. (2023). As discussed in *Love*, amendments to the burden of proof are procedural. 286 So. 3d at 185–86; *see also Brown v. L.P. Sanitation*, 689 So. 2d 332, 333 (Fla. 1st DCA 1997) ("Abolition of this rebuttable presumption changed only the procedural means and methods of establishing entitlement to benefits or offsets which flow from substantive rights that have remained unchanged since the date of Mr. Brown's industrial accident."), *superseded by statute on other grounds*. Therefore, retroactive application of this procedural aspect of section 63.082's amended version is proper.

The amended version of section 63.082 also now provides that the child's current caregiver who is a prospective adoptive parent can be given limited party status for the purpose of filing motions and providing evidence. While granting limited party status may seem to provide a substantive right, this statutory amendment is procedural, because it simply affects how the proceeding is conducted, giving the caregiver access to additional information and greater ability to be heard. Nothing in the amended version of section 63.082 gives the caregiver any rights beyond some procedural due process rights in the section 63.082(6) proceeding to aid the court in determining the child's best interest.

Certain provisions of the amended version of section 63.082 are clearly substantive, including new time limits for a parent to file the adoption consent. The Adoption Entity contends that section 63.082's amendments

must be considered as a whole and cannot be broken up into procedural provisions which could be retroactive and substantive provisions which cannot. However, we have previously recognized that procedural and substantive aspects of a statute may be severable for purposes of retroactivity. *See Cole v. Univ. Prop. & Cas. Ins. Co.,* 363 So. 3d 1089, 1094–95 (Fla. 4th DCA 2023) ("One provision that is substantive in scope does not act as a bar to enforcement of another provision that is able to be applied retroactively.") (citing *Leapai v. Milton,* 595 So. 2d 12, 15 (Fla. 1992)).

Whether considered substantive or procedural, the amended provisions of section 63.082 that concern the best interest of the child apply to the child's present circumstances. The best interest amendments do not interfere with vested rights. The reopened proceedings were a continuation of the inquiry as to what is the best interest of the child. The court erred in not applying the amended provisions of section 63.082 to this determination, including the rebuttable presumption of the appropriateness of the current placement and the requirement that the adoption entity rebut that presumption with clear and convincing evidence.

Because our reversal will require a new hearing on the change in placement, we briefly comment on an evidentiary issue. The AAL contends that the court erred in admitting the testimony of the Adoption Entity's psychologist as to the effect of the child's autism on any change of placement decision. This was opinion testimony based upon the expertise of the witness, but it did not satisfy the requirements of section 90.702, Florida Statutes (2023), which is a codification of the *Daubert* test[4] for expert opinion testimony. To permit such testimony, the court must find that:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

§ 90.702, Fla. Stat. (2022). Courts have recognized that *Daubert* is difficult to apply to testimony of a psychologist or other mental health expert, but

---

[4] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

the *Daubert* approach is flexible, and the court must still perform its gatekeeping function. *See Andrews v. State*, 181 So. 3d 526, 528 (Fla. 5th DCA 2015).

The trial court acknowledged the psychologist was not qualified as an expert in diagnosing autism. However, the court allowed the psychologist's testimony regarding the child's placement transition because the psychologist testified that he had at least two court cases in the last year where children with autism were transitioned to new placements and because neuropsychology and autism spectrum disorder diagnoses are a regular part of his practice as a clinical psychologist. We can find no reference in the record where this expert had testified that neuropsychology was part of his practice, and the anecdotal evidence provided by two placement transitions under conditions different than those facing this child does not appear to qualify as sufficient facts or data to qualify this psychologist to testify as to the effect of the child's autism on any change of placement decision.

Based upon this record, the court erred in admitting Adoption Entity's psychologist's expert opinion testimony regarding transitioning placement of the child with autism. Our conclusion is without prejudice to the submission of additional evidence to support the introduction of the expert's opinion in any subsequent hearing.

**Conclusion**

The trial court erred in failing to apply the amended version of section 63.082(6), Florida Statutes, to the modification of placement proceedings for this child. We reverse and remand for the court to conduct a new hearing, applying the presumptions and burden of proof of the amended statute. We also dismiss the appeal of the first modification order in Case No. 4D2023-2009 as nonfinal and non-appealable.

*Reversed and remanded.*

KLINGENSMITH, C.J., and CONNER, J., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**