# Third District Court of Appeal

## State of Florida

Opinion filed October 1, 2014.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D14-302
Lower Tribunal No. 7-39271

————————

**Humberto Terant, et al.,**
Appellants,

vs.

**Beltway Capital, LLC,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jacqueline Hogan Scola, Judge.

Robert P. Bissonnette, P.A., and Robert P. Bissonnette (Fort Lauderdale), for appellants.

Richman Greer, P.A., and Manuel Farach (West Palm Beach); Richman Greer, P.A., and Lyle E. Shapiro, for appellee.

Before ROTHENBERG, LOGUE and SCALES, JJ.

SCALES, J.

In this mortgage foreclosure case, Humberto Terant, et al., the defendant/borrower, appeals the trial court's sequestration order requiring that all revenues generated from the subject property be deposited into the registry of the court. We affirm the trial court's order because, as defendant properly concedes, the error was not preserved, and the trial court's error is not "fundamental error" warranting reversal.

## I. Facts

On January 8, 2007, the borrower executed a mortgage securing an $840,000 promissory note. The mortgage encumbered a transient lodging establishment known as the European Guest House, a bed-and-breakfast lodging establishment located in Miami Beach. Oddly, the mortgage was a standard Fannie Mae/Freddie Mac single-family home form mortgage.

The borrower contemporaneously executed a Family Rider (Assignment of Rents) form, which unconditionally assigned to the Lender all the rents and revenues of the property.

In relevant part, Section H of the assignment of rents, reads as follows:

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION**. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of

2

default . . . and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.

. . . .

Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

In November 2007, the lender's assignee, Appellee Beltway Capital (Beltway), filed the instant foreclosure action, alleging the borrower was in default of the note and mortgage.

In November 2013, Beltway filed a motion seeking an order from the trial court requiring the borrower "to sequester all collected rents for the real property . . . pursuant to Fla. Stat. Section 697.07(4)."

On January 9, 2014, the trial court held a hearing on Beltway's motion, and the following day, January 10, entered the order on appeal. The order required the borrower to "deposit all rents collected from the Property into the registry of this Court within five (5) days from receipt thereof" during the pendency of the foreclosure action.

The order also contained the following language: "All of the rents, revenue, income, and profits from the Property shall constitute and be construed as 'rents' for all purposes under Section 697.07 (2013), Florida Statutes."

On January 16, 2014, Terant filed a Motion to Vacate and/or Amend the trial court's January 10 sequestration order. In the motion, Terant argued that it was

3

impossible for the borrower to comply with the order without "waste occurring and without destroying the continued existence of the business being conducted thereon[.]" Terant requested that the trial court enter an amended order excluding the guest house's operating expenses from the sequestration order.

On February 7, 2014, Terant filed the instant appeal on the trial court's January 10, 2014, sequestration order. We relinquished jurisdiction of the case to allow the trial court to hear Terant's Motion to Vacate and/or Amend the sequestration order.

On April 11, 2014, the trial court conducted a hearing on Terant's Motion to Vacate and/or Amend. While the transcript to that hearing is in the record before this court, the resulting order denying the borrower's motion is not in the record.

## II. Borrowers' Arguments on Appeal

On appeal, Terant makes three arguments: (i) Beltway should be estopped from seeking sequestration of rents because Beltway waited over six years to seek rent sequestration, (ii) the trial court's expansive definition of "rents" to be sequestered constituted fundamental error, and (iii) Beltway lacks standing to bring the foreclosure action. At oral argument, Terant conceded that the third argument (regarding standing) was without merit. Likewise, we summarily conclude Terant's estoppel argument is without merit.

4

We write only to address Terant's second argument, i.e., that the trial court committed "fundamental error" by requiring the sequestration of all business revenues generated from the borrower's commercial operation of the subject property.

At oral argument, Terant conceded that he had not preserved this argument, and that, to reverse the trial court's order on this basis, this court would have to conclude that the trial court committed "fundamental error."

### III. Analysis

Generally, for an appellate court to reverse unpreserved error in a civil case, the error has to be "fundamental error," i.e., error which goes to the foundation of the case, Millen v. Millen, 122 So. 3d 496, 498 (Fla. 3d DCA 2013), or involves an egregious deprivation of a constitutional right. Sec. Bank, N.A. v. BellSouth Adver. & Publ'g Corp., 679 So. 2d 795, 803 (Fla. 3d DCA 1996); Yau v. IWDWarriors, Corp., No. 1D13-1698 (Fla. 1st DCA June 11, 2014).

A trial court's improper construing of a contract or statute generally does not implicate fundamental error. See, e.g., Millen, 122 So. 3d at 498 (concluding trial court's allowance of guardian ad litem to question a witness contrary to statute did not warrant reversal because the error was not fundamental to the case).

While we agree with the borrower that "rents" which are subject to foreclosure proceeding sequestration pursuant to either (i) Section 697.07, Florida

5

Statutes (2013)[1], or (ii) Section H of the mortgage's assignment of rents rider,[2] do

[1] The term "rents" contemplated in Section 697.07 does not include the revenues collected by a hotel from charges to hotel guests. See Orlando Hyatt Assocs., Ltd. v. F.D.I.C, 629 So. 2d 975, 977 (Fla. 5th DCA 1993); In re Ashoka Enters., Inc., 125 B.R. 845, 846 (Bankr. S.D. Fla. 1991); In re Shore Haven Motor Inn, Inc., 124 B.R. 617, 618 (Bankr. S.D. Fla. 1991); In re Punta Gorda Assocs., 137 B.R. 535, 537 (Bankr. M.D. Fla. 1992).

[2] The definition of "Rents" in Section H includes two components: rents derived from the subject property and revenues derived from the subject property. However, all such-defined "Rents" are payable to the borrower unless and until the Lender provides notice to tenants that such payments are to be paid to the Lender. Plainly general business receipts of the borrower (such as guest room revenues) are not contemplated as "Rents" under this provision. See Bari Builders, Inc. v. Hovstone Props. Fla., LLC, No. 4D14-765 (Fla. 4th DCA Aug. 6, 2014) (citing J.C. Penney Co. v. Koff, 345 So. 2d 732, 735 (Fla. 4th DCA 1977) (stating to determine their true meaning, courts must review contracts "without fragmenting any segment or portion")); see also World Vacation Travel, S.A., de C.V. v. Brooker, 799 So. 2d 410, 412 (Fla. 3d DCA 2001) (quoting Paddock v. Bay Concrete Indus., Inc., 154 So. 2d 313, 315-16 (Fla. 2d DCA 1963) (advising that all of the various parts of a contract must be construed so as to give effect to each)).

It is clear from the text of Section H that the "revenues" component of "Rents" relates to sums a borrower-landlord may collect from a tenant and pay to the third-parties, such as taxes, insurance, and utilities.

Additionally, had the parties contractually intended for the term "Rents" to include all business receipts derived by the borrower from the property, the use of the words "and profits" after the word "Rents"—relating to what a receiver is empowered to collect—would be mere surplusage. It bears noting that Appellee did not seek the appointment of a receiver in this case.

Finally, construing the word "Rents" in this Family Rider form, intended for single-family home loans, to include all business receipts of the borrower derived from the mortgaged property could lead to absurd results. Surely, the mortgage does not provide for an unconditional assignment of all business receipts generated from the borrower's use of a home office, garage sale, or lemonade stand on the subject property. See Paddock, 154 So. 2d at 316 (stating "if one construction [of a contract] would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability").

not include all general accounts receivable and business revenues generated from all commercial use of the subject property, we conclude that the trial court's error in this regard did not constitute fundamental error.

Affirmed.