DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**W.K.** and **M.K.**, foster parents, and
**GUARDIAN AD LITEM PROGRAM**,
Appellants,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES**,
and **ADOPTION BY SHEPHERD CARE**,
Appellees.

No. 4D17-1549

[August 30, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Daliah H. Weiss, Judge; L.T. Case No. 2015DP300711/JK.

Roger Ally of the Law Offices of Roger Ally, P.A., Fort Lauderdale, for appellants W.K. and M.K., foster parents.

Christian Pietka and Sara Elizabeth Goldfarb, Sanford, for appellant Guardian Ad Litem Program.

Trey E. Miller of the Law Office of Trey E. Miller III, P.A., Fort Lauderdale, for appellee Adoption by Shepherd Care.

No brief filed for appellee Department of Children and Families.

LEVINE, J.

A child was sheltered two months after birth and placed with foster parents after his release from the hospital. During the pendency of a petition to terminate parental rights, the mother executed a surrender and consent to adopt with Adoption by Shepherd Care ("ASC"), an adoption agency. The father also surrendered his rights to the Department of Children and Families. ASC intervened and filed a motion to transfer custody of the child to the prospective adoptive parents chosen by the mother. The trial court subsequently granted the motion to transfer custody of the child to the prospective adoptive parents.

The foster parents and the guardian ad litem program ("GAL") appeal

the order transferring custody of the child. We dismiss the foster parents' appeal because they do not have standing to appeal. As to the GAL's appeal, we affirm because competent substantial evidence supports the trial court's decision.

At the time of the hearing on the motion to transfer custody, the child was eighteen months old. It was undisputed that the child had bonded to the foster parents. The Department did not object to the request for placement with the prospective adoptive parents. The GAL was the only opposing party.

During the hearing, ASC's expert testified that the first three years of a child's life are the most critical for bonding and attachment. An eighteen-month-old can have a secure attachment with a new caregiver. The fact that the child has bonded at his current placement was a sign that he could likewise attach to the prospective adoptive parents. The risk of moving a child from a current caregiver of fifteen months to a new caregiver would be minimal and should not be detrimental for a child despite having a healthy attachment to a current caregiver.

ASC completed a positive home study on the prospective adoptive parents. An adoption specialist at ASC testified about the appropriateness of a placement with the prospective adoptive parents and recommended that they adopt the child. The prospective adoptive parents testified they want to adopt the child and testified about what they had done to prepare for the adoption. A dependency case manager and supervisor from the Children's Home Society recommended a gradual transition plan in the event of removal.

The foster parents testified regarding their relationship with the child. They further testified that they were willing to adopt the child. However, they did not have an approved home study, and significantly, nothing in the record indicated they had taken any steps towards adoption. The guardian ad litem testified regarding how well the child and foster parents were doing together. On cross-examination, she admitted that the prospective adoptive parents "seemed like a lovely couple" and that she had no reason to believe they would not be appropriate adoptive parents. The GAL also presented expert testimony that it would be detrimental to remove the child from a secure attachment.

In a detailed order, the trial court granted the motion to transfer custody to the prospective adoptive parents and ordered a transition plan. From this order, the foster parents and the GAL appeal.

The Department has moved to dismiss the appeal as to the foster parents for lack of standing. We agree that the foster parents do not have standing to appeal the order. Florida Rule of Appellate Procedure 9.146(b) provides that an appeal may be filed by "[a]ny child, any parent, guardian ad litem, or any other party to the proceeding affected by an order of the lower tribunal, or the appropriate state agency as provided by law." The foster parents were not parties to the proceedings below, but rather were simply participants. *See* § 39.01(51), (52), Fla. Stat. (2017). *See also C.M. v. Dep't of Children & Families*, 981 So. 2d 1272, 1272 (Fla. 1st DCA 2008); *D.C. v. J.M.*, 133 So. 3d 1080, 1081-82 (Fla. 3d DCA 2014).

The foster parents cite to *R.L. v. W.G.*, 147 So. 3d 1054 (Fla. 5th DCA 2014), claiming that their "stronger than normal bond" with the child gives them standing to contest the removal of the child from their care. Nothing in *R.L.* supports the foster parents' contention. *R.L.* held that the foster parents did not have a right to intervene in trial proceedings to set aside a placement change. Although the foster parents in the instant case might potentially have had a right to intervene in the proceedings below, that is not the issue raised before us.[1] Instead, the issue is whether the foster parents have standing to appeal an order transferring custody of the child. Because the foster parents lack standing, we dismiss their appeal.

The GAL also challenges the transfer of custody. An order transferring custody is reviewed for abuse of discretion. *M.A. v. Dep't of Children & Families*, 906 So. 2d 1226, 1227 (Fla. 1st DCA 2005). A trial court does not abuse its discretion where competent substantial evidence supports the trial court's finding that the change in custody is in the best interests of the child. *Id.*

The GAL claims that it is in the child's best interest to remain in the custody of the foster parents and to be adopted by them. However, it is not the court's role to determine which placement would be better for the child. Section 63.082(6)(a), Florida Statutes (2017), provides that "[i]f a parent executes a consent for adoption, . . . the adoption consent is valid, binding, and enforceable by the court." If the court determines that the prospective adoptive parents are qualified to adopt the child and that the adoption is in the best interests of the child, "the court shall promptly

---

[1] The trial court proceeded with the hearing on the motion to transfer custody without ruling on the foster parents' motion to intervene. Although the foster parents objected below on due process grounds, they do not raise any due process issue on appeal. Therefore, any argument is waived and abandoned. *See Polyglycoat Corp. v. Hirsch Distrib., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983).

order the transfer of custody of the minor child to the prospective adoptive parents." § 63.082(6)(d), Fla. Stat. Thus, "the 'best interest' analysis requires a determination that the birth parent's choice of prospective adoptive parents is appropriate and protects the well-being of the child; not that it is the best choice as evaluated by the court or the Department in light of other alternatives." *See In re S.N.W.*, 912 So. 2d 368, 373 n.4 (Fla. 2d DCA 2005).

In determining the best interests of the child, the legislature enumerated in section 63.082(6)(e), the following non-exclusive factors to be considered by the trial court:

> 1. The permanency offered;
>
> 2. The established bonded relationship between the child and the current caregiver in any potential adoptive home in which the child has been residing;
>
> 3. The stability of the potential adoptive home in which the child has been residing as well as the desirability of maintaining continuity of placement;
>
> 4. The importance of maintaining sibling relationships, if possible;
>
> 5. The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient maturity, understanding, and experience to express a preference;
>
> 6. Whether a petition for termination of parental rights has been filed pursuant to s. 39.806(1)(f), (g), or (h);
>
> 7. What is best for the child; and
>
> 8. The right of the parent to determine an appropriate placement for the child.

The trial court made detailed findings as to each of the eight statutory factors relating to the best interests of the child, and its findings were supported by competent substantial evidence in the record. Factors relied on by the court included a determination that placement with the prospective adoptive parents offered the child permanency, and it was undisputed that the prospective adoptive parents were an appropriate placement for the child. Even the guardian ad litem, the party opposing

the modification, agreed that she had no reason to believe the prospective adoptive parents would not be an appropriate placement.

As the trial court recognized, the prospective adoptive parents "are offering [the child] permanency and an adoptive home that was not speculative or uncertain. If the Court were to deny the modification of placement, it would leave [the child] in licensed foster care, where he may or may not be adopted one day . . . ."

Although the child was bonded to the foster parents, the trial court correctly found that this bond did not override all of the other statutory factors. ASC's bonding expert testified that the risk of moving the child was minimal and that the child would be able to bond with a new caregiver. The expert further stated that the first three years of a child's life are the most critical for bonding and attachment and that the child had eighteen months left of that critical bonding time.

The trial court also properly recognized and gave effect to the mother's "fundamental right . . . to make decisions concerning the care, custody, and control of [her] child[]." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Additionally, as noted above, section 63.082(6) provides parents with the statutory right to select prospective adoptive parents for the child. The mother asserted her fundamental and statutory rights to choose the adoptive family for her child. Given the competent substantial evidence demonstrating the appropriateness of the placement, there was no reason for the trial court to override the mother's constitutional and statutory rights to make a choice.

In sum, we dismiss the appeal as to the foster parents for lack of standing, and we affirm the transfer of custody.

*Dismissed in part; affirmed in part.*

WARNER and CONNER, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

5