IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

GUARDIAN AD LITEM PROGRAM,

       Petitioner,

 v.                                 Case No.  5D22-0217
                                       LT Case No. 2019-DP-33

SARAH CAMPBELL, ADOPTION
ENTITY, AND DEPARTMENT OF
CHILDREN AND FAMILIES,

       Respondents.

_____/

Opinion filed April 29, 2022

Petition for Certiorari Review of Order
from the Circuit Court for Osceola County,
Diego Madrigal, III, Judge.

Sara Elizabeth Goldfarb, Statewide
Director of Appeals, and Laura J. Lee,
Assistant Director of Appeals, of
Statewide Guardian ad Litem Office,
Tallahassee, for Petitioner.

Sarah Campbell, of Jay & Campbell, PLLC,
Stuart, for Respondent, Sarah Campbell,
Adoption Entity.

Kelly Schaeffer, of Children's Legal
Services, Bradenton, for Respondent,
Department of Children and Families.

PER CURIAM.

In this termination of parental rights proceeding, the Guardian Ad Litem Program petitions for a writ of certiorari to quash an order that transferred custody of J.G., a now three-year-old child (the "Child"), to the prospective adoptive parents chosen by the natural parents. We find that the trial court departed from the essential requirements of the law[1] when ordering the transfer of custody and that this error presents an immediate threat of irreparable harm to the Child.

In March 2019, the Child was sheltered by the Department of Children and Families ("the Department") when he was five days old due to his parents' substance abuse and mental health issues. The Child was initially

---

[1] A "departure from the essential requirements of the law" requires "a violation of a clearly established principle of law." *Dodgen v. Grijalva*, 331 So. 3d 679, 684 (Fla. 2021) (quoting *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003)).

> "[C]learly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law. Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.

*Dodgen,* 331 So. 3d at 684 (quoting *Kaklamanos*, 843 So. 2d at 890).

placed with his maternal grandmother but two months later, he was placed with foster parents, with whom the Child has lived ever since, while the Department pursued a termination of parental rights ("TPR") proceeding against the Child's natural parents. Approximately two weeks before the final TPR hearing, the natural parents executed surrenders of their parental rights and consents to adopt with Attorney Sarah J. Campbell, acting as an adoption entity. The consents stated that the natural parents desired the Child to be adopted by his paternal grandfather and his wife (the "Grandparents"), who live in New York. The adoption entity moved to intervene in the TPR proceeding, and the trial court allowed the intervention pursuant to section 63.082(6)(c), Florida Statutes (2021), and found the consents to be valid and binding.

The adoption entity then filed a motion to transfer custody of the Child to the Grandparents pursuant to section 63.082(6)(d), Florida Statutes (2021), which both the Department and the Guardian ad Litem ("GAL") opposed. During a multi-day hearing on the motion to transfer custody, the trial court heard testimony, which the court thoroughly summarized in its detailed order on the motion. The witnesses included bonding experts, who offered differing opinions on the effect the transfer of custody would have on the Child; the paternal grandfather's wife, who desired to adopt the Child; the

3

Child's foster mother; the Department's dependency case manager; and the GAL. The trial court also considered the deposition testimony of the Child's natural mother, who expressed a desire to reunite with the Child. The paternal grandfather's wife testified to the Grandparents' efforts to adopt the Child and their visits with the Child.

The Child's foster mother testified to the love and affection between the Child and his foster parents that has developed since his placement with them in May 2019 and to the Child's relationship and frequent visits with his half-sibling, who lives nearby. The foster mother stated their wish to adopt the Child after the TPR proceedings are completed. The Department's case manager testified that the Department opposes the custody transfer due to the bond she observed between the Child and his foster parents and local half-sibling. Similarly, the GAL opposed the transfer after observing the Child's interactions with his foster parents indicating love and affection; she also expressed a negative view of the Child's bonding assessment with the Grandparents, which she observed.

After the hearing, the trial court rendered its comprehensive order on the motion to transfer custody. The trial court stated that the motion was controlled by legal authority contained in the Florida Constitution, Florida Statutes, and case law, and the trial court believed these "to be at odds with

4

each other." The court outlined the statutory process involved in interventions for purposes of adoption contained in section 63.082(6) and diligently addressed the best interests factors contained in section 63.082(6)(e), Florida Statutes (2021). It interpreted the plain language of the statute to require a determination that the prospective adoptive parents are appropriate and that the change of placement is in the child's best interests, which, in this case it believed, would invite a comparison of the options available to the court, including transferring custody to the Grandparents or keeping the Child in his current placement.

The trial court concluded that if it were writing on a clean slate, it would not find that a change was in the Child's best interests based solely on the plain language of the statutory factors. It did not believe, however, that it was free to apply its plain language interpretation of the statute because of case law from the Fourth District Court articulating the standard to be applied by the court differently. *See W.K. v. Dep't of Child. & Fams.*, 230 So. 3d 905, 908 (Fla. 4th DCA 2017) (stating that "it is not the court's role to determine which placement would be better for the child" and "the 'best interest' analysis requires a determination that the birth parent's choice of prospective adoptive parents is appropriate and protects the well-being of the child; not that it is the best choice as evaluated by the court or the Department in light

5

of other alternatives"). Although the trial court believed this language in *W.K.* to be incorrect, it adhered to what it concluded was *W.K.*'s binding precedent and, accordingly, found that the Grandparents were qualified to adopt and the natural parents' choice was appropriate, although not the best choice. The trial court then granted the motion to transfer custody to the Grandparents but stayed the order pending this Court's review.

We find that the trial court's order departed from the essential requirements of the law, causing irreparable harm to the Child if custody were to be transferred. *See Guardian ad Litem Program v. R.A.*, 995 So. 2d 1083 (Fla. 5th DCA 2008) (granting certiorari and quashing order granting motion for change of child's placement when trial court failed to follow statutory directives). We begin with the plain language of section 63.082(6)'s text. *See Ervin v. Collins*, 85 So. 2d 852, 855 (Fla. 1956) (observing that plain language of text is beginning point of analysis). "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Advis. Op. to Gov. Re: Implementation of Amend. 4*, *the Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Consequently, "[w]here the language of the [statute] 'is clear, unambiguous, and addresses the matter in issue, then it

6

must be enforced as written . . . .'" *Israel v. DeSantis*, 269 So. 3d 491, 495 (Fla. 2019) (quoting *Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n*, 489 So. 2d 1118, 1119 (Fla. 1986)). Applying these interpretive principles, we hold that the trial court incorrectly disregarded its analysis of section 63.082(6)(e)'s factors in favor of its interpretation of *W.K.*'s statement regarding the standard to be employed in deciding motions to transfer custody.

Section 63.082(6) permits an "adoption entity" to intervene in a dependency case where parental rights have not yet been terminated and a parent has executed a consent for placement of a minor with an adoption entity or qualified prospective adoptive parents. § 63.082(6)(a)-(b), Fla. Stat. (2021). In this case, both parents signed consents for adoption by the Grandparents, and the adoption entity filed the motion to transfer custody prior to the termination of either parent's parental rights. The trial court then was required to conduct the evidentiary hearing pursuant to section 63.082(6)(c) to determine whether the Grandparents were properly qualified to adopt the Child and whether the adoption was in the best interests of the Child, "after consideration of all relevant factors, including those set forth in paragraph (e)." § 63.082(6)(d), Fla. Stat. In turn, section 63.082(6)(e) lists

eight non-exclusive factors[2] the court must consider when determining whether the best interests of a child are served by transferring custody of the child to the prospective adoptive parent selected by the parents. § 63.082(e), Fla. Stat. (requiring that "the court shall consider and weigh all relevant factors, *including, but not limited to . . . .*" (emphasis added)). These eight factors are:

> 1. The permanency offered;
>
> 2. The established bonded relationship between the child and the current caregiver in any potential adoptive home in which the child has been residing;
>
> 3. The stability of the potential adoptive home in which the child has been residing as well as the desirability of maintaining continuity of placement;
>
> 4. The importance of maintaining sibling relationships, if possible;

---

[2] Prior to 2016, section 63.082(6)(e) contained only four specified factors without the current requirement that courts consider "all factors":

> In determining whether the best interests of the child are served by transferring the custody of the minor child to the prospective adoptive parent selected by the parent, the court shall consider the rights of the parent to determine an appropriate placement for the child, the permanency offered, the child's bonding with any potential adoptive home that the child has been residing in, and the importance of maintaining sibling relationships, if possible.

§ 63.082(6)(e), Fla. Stat. (2015).

5. The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient maturity, understanding, and experience to express a preference;

6. Whether a petition for termination of parental rights has been filed pursuant to s. 39.806(1)(f), (g), or (h);

7. What is best for the child; and

8. The right of the parent to determine an appropriate placement for the child.

§ 63.082(6)(e), Fla. Stat.

After weighing the evidence and applying these eight factors, the trial court concluded that the Child's best interests would not be served by transferring custody to the Grandparents. However, the trial court then erroneously elevated the right of the natural parents to determine the appropriate placement for the Child (the eighth factor in section 63.082(6)(e)) above all other factors and disregarded what it believed was best for the Child (the seventh factor in section 63.082(6)(e)), citing *W.K.* as requiring that it do so. This was improper, as the Third District Court has explained:

> Although parents have a fundamental right to raise their children, and section 63.082(6)(e) provides the parents with the statutory right to select a prospective adoptive parent or parents for the child, that right is not absolute. *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So. 2d 565, 570 (Fla. 1991) (holding that a parent's fundamental right to raise his or her child is "subject to the overriding principle that it is the

9

> ultimate welfare or best interest of the child which must prevail") (citing *In re Camm*, 294 So. 2d 318, 320 (Fla. 1974)); *P.K. v. Dep't of Children & Families*, 927 So. 2d 131, 133 (Fla. 5th DCA 2006). Thus, *the wishes of the parents are a factor, but those wishes must be considered with the other three [now seven] factors, which relate to a determination of what is in the best interest of the child.*

*E.Q. v. Dep't of Child. & Fams.*, 208 So. 3d 1258, 1260 (Fla. 3d DCA 2017) (emphasis added).

In *W.K.*, the Fourth District Court's straightforward holding was to affirm the trial court's order transferring custody to the prospective adoptive parents "because competent substantial evidence support[ed] the trial court's decision."[3] 230 So. 3d at 906. We note that in summarizing "the 'best interest' analysis" to be employed by the courts, *W.K.* relied on *In re S.N.W.*, 912 So. 2d 368, 373 n.4 (Fla. 2d DCA 2005) (holding that, in deference to parent's "constitutional right to the care, custody, and control of their children," a trial court may not compare the selected prospective adoptive parents with other placements the court or Department might otherwise choose), a case relying on a prior version of section 63.082 that did not contain the "non-exclusive" language of the current statute, instead requiring

---

[3] The Fourth District Court's jurisdiction to review the order transferring custody, presumably a nonfinal order, is not clear from its opinion.

only a specified four-factor analysis.[4]  Moreover, there are notable differences between *W.K.* and this case.  The Department in *W.K.* did not object to the change in custody (here, it did) "and it was undisputed that the prospective adoptive parents were an appropriate placement for the child." 230 So. 3d at 908.  Further, unlike this case, nowhere in *W.K.* is there an indication that the trial court found that it was not in the child's best interests to transfer custody.[5]

The current version of section 63.082(6) is clear that when considering a motion to transfer custody of a dependent child who is under the supervision of the Department, the trial court must consider the wishes of the natural parent or parents, if their parental rights have not been terminated, <u>and</u> weigh those wishes with the other seven factors articulated in section 63.082(6)(e), along with "all relevant factors."  § 63.082(6)(e), Fla. Stat.; *see*

---

[4] In *In re Adoption of K.A.G.*, 152 So. 3d 1271 (Fla. 5th DCA 2014), a case where section 63.082 was inapplicable because the child was not in the Department's custody, this Court expressed in a footnote in dicta its approval of *In re S.N.W.*'s best interests analysis.  As noted above, *S.N.W.* analyzed a prior version of the statute.

[5] *W.K.* also states that all of the factors in section 63.082(6)(e) should be considered without one overriding the others.  230 So. 3d at 908 (noting that trial court correctly found that child's bond with foster parents "did not override all of the other statutory factors" and that mother's right to choose adoptive family was properly "recognized as one of the factors in the statute").  The trial court's order in this case improperly allows certain factors to override others.

*also E.Q.*, 208 So. 3d at 1261 ("It is therefore clear that when considering a motion by a parent to transfer a dependent child, who has been placed with the department or a legal custodian, to a relative, the trial court must consider the wishes of the parent or parents, if their parental rights have not been terminated, and weigh those wishes with the other . . . factors articulated in section 63.082(6), which relate to the best interests of the child."). The trial court correctly followed this statutory directive and entered an order with factual findings under section 63.082(6)(e). However, **based on its interpretation of** *W.K.*'s **statement about the court's role in determining a custody transfer to prospective adoptive parents, the trial court** reluctantly ordered custody transferred to the Grandparents, even though it had concluded that this transfer was not in the Child's best interests. Its ultimate conclusion inappropriately elevated one factor over the others and constituted a departure from the essential requirements of the law causing irreparable harm. Therefore, we grant the petition for writ of certiorari, quash the order on review, and remand the matter to the trial court for further proceedings applying the correct law.

PETITION GRANTED; ORDER QUASHED; REMANDED for further proceedings.

LAMBERT, C.J., TRAVER and WOZNIAK, JJ., concur.

12