DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

In the Interest of K.B., a child.

HEART OF ADOPTIONS, INC.,

Petitioner,

v.

DEPARTMENT OF CHILDREN AND FAMILIES,

Respondent.

No. 2D22-2496
_____

September 8, 2023

Petition for Writ of Certiorari to the Circuit Court for Hillsborough County; Miriam V. Valkenburg, Judge.

Barbara T. Ginn of Jeanne T. Tate, P.A., Tampa, for Petitioner.

Mary Soorus of Children's Legal Services, Tampa, for Respondent.

PER CURIAM.

Heart of Adoptions, Inc., appeals an order denying its petition to change the placement of K.B. We conclude that the order is not a final appealable order, but we have issued an order converting the appeal to a petition for writ of certiorari and conclude that the trial court did not depart from the essential requirements of the law.

## I.

On October 8, 2020, the Department of Children and Families (the Department) placed the child in out-of-home care in the custody of licensed foster parent, E.W. It filed a petition for adjudication of dependency nine days later. After the biological mother, C.B., entered her consent to the petition for adjudication of dependency on February 10, 2021, the court adjudicated the child dependent as to the mother. At a status conference in October 2021, the foster parent indicated her interest in adopting the child.

The Department filed a new case plan with a stated goal of adoption after the expiration of the original reunification case plan. The child's guardian ad litem, K.S., wanted to adopt the child, so she recused herself from the case and retained the Heart of Adoptions adoption agency, which petitioned to intervene and to transfer placement of the child to K.S. on December 17, 2021. Along with the petition, Heart of Adoptions filed a consent to adoption signed by the biological mother. In the consent, the biological mother

> agree[d] to relinquish all rights to, and custody of, the child to the Adoption Entity with the understanding that the child will be placed with a person or persons whose full identities are unknown to me and do further consent to adoption by said person or persons, if a [c]ourt of competent jurisdiction should approve. The full names of the person or persons who will adopt said child are unknown to me, but known to the Adoption Entity to whom this consent is given.

On February 3, 2022, the trial court held a hearing on Heart of Adoption's petition to intervene and to transfer placement of the child. No transcript appears in the record, but according to notations on the case summary, the court orally granted the motion to intervene and denied the motion to change placement without prejudice. A subsequent hearing on the motion for change

2

of placement was held on February 28, 2022. The court minutes reflect no objections to the intervention. However, the child's foster parent objected to the change of placement.

A hearing was set for May 5, 2022, but it was canceled. The final evidentiary hearing on the motion for change of placement did not take place until May 31, 2022. The court heard testimony from the child in camera, as well as from the prospective adoptive mother, the case manager, and the foster parent. The court noted the date that the motion was filed, as well as the prior hearings. Counsel for Heart of Adoptions did not object to the delay.

On July 18, 2022, the court entered a written order granting the motion to intervene but denying the motion for change of placement. The court found, after considering all the statutory factors, *see* § 63.082(6)(e), Fla. Stat. (2021), that the prospective adoptive parents were qualified to adopt the child but that the adoption by those parents was not in the child's best interests. The court noted that the child was bonded to her foster parent, who wished to adopt her, her foster parent's extended family, and her foster sister, who was also being adopted by the foster parent. The court also noted that the prospective adoptive parents were given multiple directives not to visit the child, yet they appeared unannounced at the foster home. The prospective adoptive mother admitted as much at the hearing. The court reiterated that the case manager testified that it opposed changing the child's placement.

## II.

### A.

Heart of Adoptions maintains that the order granting the motion to intervene but denying the motion for change of placement is a final, appealable order. An order is considered "final" when judicial labor has

3

ended. *M.M. v. Fla. Dep't. of Child. & Fams.*, 189 So. 3d 134, 137 (Fla. 2016). Had the trial court denied the motion to intervene as well as the change of placement request, then judicial labor would have ended as to Heart of Adoptions. *See, e.g.*, *Adoption Miracles, LLC v. S.C.W. (In re S.N.W.)*, 912 So. 2d 368, 370 (Fla. 2d DCA 2005) (concluding that an order that denied intervention and set aside the biological mother's consent to adoption was a final order). However, the trial court's order *granted* the motion to intervene by Heart of Adoptions while denying the change of placement for the child. Unlike in *S.C.W.* in which the Adoption Miracles agency was denied the opportunity to intervene and the trial court revoked the consent upon which Adoption Miracles' status as a party was based, *id.* at 369, in this case the consent to the adoption is still valid and enforceable and cannot be withdrawn unless "the court finds that it was obtained by fraud or duress," *see* § 63.082(4)(b).

Regardless of where the child is placed during the pendency of the Department's termination of parental rights action, Heart of Adoptions would be required to file a separate action in order to achieve *permanent* placement of the child with a prospective adoptive parent it represents. Because the consent remains valid, Heart of Adoptions could later file a petition to terminate parental rights pending adoption. *See* §§ 63.087(4), .089. Heart of Adoptions could also file a petition for adoption on behalf of the prospective adoptive parents who retained its services after resolution of the Department's petition for termination of parental rights. *See* § 39.812(5), Fla. Stat. (2021) (permitting prospective adoptive parents to file a petition for adoption after the judgment terminating parental rights becomes final). In the meantime, Heart of Adoptions is afforded its rights as an intervenor in this case—the ongoing termination of parental rights action brought by the Department—even though the

4

temporary placement determination at issue in this appeal was not decided in its favor. While the trial court declined to place the child with the prospective adoptive parents because it determined that adoption by them would not be in the best interest of the child, the trial court *did* find the prospective adoptive parents qualified. *See* § 63.082(6)(d) ("If . . . the court determines that the prospective adoptive parents *are properly qualified* to adopt the minor child *and* that the *adoption is in the best interests of the minor child*, the court shall promptly order the transfer of custody of the minor child to the prospective adoptive parents, under the supervision of the adoption entity." (emphasis added)). The denial of the transfer was for *temporary* placement, which by its nature depends on the facts as they exist at the time of the request, and Heart of Adoptions remains an intervenor with the ability to revisit that determination by way of reconsideration if the circumstances meaningfully change during the course of the proceedings.

Furthermore, Heart of Adoptions has the ability to advance another couple to adopt the child based on the consent provided by the biological mother because it was not conditioned on placement of the child with a specific adoptive home. *See generally C.D.F. v. D.R.*, 351 So. 3d 1208, 1212 n.5 (Fla. 2d DCA 2022) ("[T]he legislature . . . explicitly permits an adoption entity to intervene in the dependency case where a parent executes a consent for adoption."). Contrary to Heart of Adoptions' assertion, there is nothing in chapter 63 to indicate that it would need to file another motion to intervene, given that the biological mother's consent to adoption remains valid and did not name the specific prospective adoptive parent to whom the court declined to transfer placement of the child. *See* § 63.082(6)(b) ("Upon execution of the consent of the parent, the adoption entity shall be permitted to intervene

5

in the dependency case as a party in interest and must provide the court that acquired jurisdiction over the minor, pursuant to the shelter order or dependency petition filed by the department, a copy of the preliminary home study of the prospective adoptive parents and any other evidence of the suitability of the placement."); *cf. In re Adoption of K.A.G.,* 152 So. 3d 1271, 1276 (Fla. 5th DCA 2014) (explaining that the father's consent "was conditioned on the trial court granting Grandmother's petition to adopt Child" and concluding that the consent would be deemed withdrawn if the trial court found that adoption by the Grandmother is not in the best interests of the child).

Because judicial labor as to Heart of Adoptions, which remains a party, has not ended, the order denying the change of placement is not a final order.

**B.**

However, the order is reviewable as a petition for certiorari. *See* Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought . . . ."). Certiorari jurisdiction requires that the party seeking relief demonstrate "that an interlocutory order creates material harm irreparable by postjudgment appeal." *Parkway Bank v. Fort Myers Armature Works, Inc.,* 658 So. 2d 646, 649 (Fla. 2d DCA 1995). Upon such a showing, the court then "has power to determine whether the order departs from the essential requirements of the law." *Id.*

The loss of custody of the child from the filing of the motion for change of placement is the loss of a right to which Heart of Adoptions is statutorily entitled upon the demonstration of the prospective parents' qualification and determination that transfer of custody is in the best interest of the child. *See* § 63.082(6)(d) ("If after consideration of all

6

relevant factors, including those set forth in paragraph (e), the court determines that the prospective adoptive parents are properly qualified to adopt the minor child and that the adoption is in the best interests of the minor child, the court *shall promptly order* the transfer of custody of the minor child to the prospective adoptive parents, under the supervision of the adoption entity." (emphasis added)).  The right of a prospective adoptive parent to obtain custody over the child pending adoption is a right that may only be exercised during the pendency of the termination of parental rights proceedings.  In this way, it is analogous to the denial of defense of self or others immunity under section 776.032, Florida Statutes (2021), which is also reviewable by certiorari.  *See Jefferson v. State*, 264 So. 3d 1019, 1023 (Fla. 2d DCA 2018) (finding certiorari jurisdiction where the petitioner argued the ruling deprived him of a proper hearing on his claim to immunity from prosecution).  Like a petitioner improperly deprived of immunity from prosecution—relief to which he was entitled by statute but which he could only enjoy *before* being tried—"relief by direct appeal" after a final judgment "would be no relief at all" to a prospective adoptive parent improperly deprived of custody to which she was statutorily entitled *during the pendency of* the termination of parental rights proceedings.  *See id.* (quoting *Pearlstein v. Malunney*, 500 So. 2d 585, 587 (Fla. 2d DCA 1986)); *Montanez v. State*, 24 So. 3d 799, 801 (Fla. 2d DCA 2010) ("[B]ecause of the nature and purpose of a claim of immunity from suit, an appeal after final judgment would not be an adequate remedy; a party can not [sic] be reimmunized from suit after-the-fact." (quoting *Vermette v. Ludwig*, 707 So. 2d 742, 744 (Fla. 2d DCA 1997))).

Denial of the motion for change of placement is also analogous to an order granting a motion to add a claim for punitive damages, which,

before the recent addition to the list of nonfinal appealable orders in Florida Rule of Appellate Procedure 9.130(a)(3)(G), was reviewable by certiorari. *See Globe Newspaper Co. v. King*, 658 So. 2d 518, 520 (Fla. 1995). Certiorari jurisdiction over orders on motions to add claims for punitive damages was appropriate because "a plenary appeal cannot restore a defendant's statutory right under section 768.72 to be free of punitive damages allegations in a complaint until there is a reasonable showing by evidence in the record or proffered by the claimant." *Id.* Here, similarly, an appeal after the culmination of the proceedings to terminate the biological mother's parental rights will not restore the potential adoptive parents' right to obtain custody over the child prior to termination. *See generally* § 63.082(6)(a) (providing that the consent to adoption remains "valid, binding, and enforceable" prior to termination of parental rights pursuant to chapter 39).

Furthermore, the inability of Heart of Adoptions to secure the temporary placement of the child with the prospective adoptive parents could affect their ability to adopt the child as a consequence of its positional effect on the various parties vying for the right to adopt the child. Obtaining custody of the child during the pendency of the termination of parental rights proceeding would make it more difficult for the foster parents—who also expressed interest in adopting the child—to petition for adoption because section 63.087(4)(b) provides that

> [t]he petition [seeking to terminate parental rights pending adoption] may be filed by a parent or person *having physical custody* of the minor. The petition may be filed by an adoption entity only if a parent or person having physical or legal custody who has executed a consent to adoption pursuant to s. 63.082 also consents in writing to the adoption entity filing the petition.

8

(Emphasis added). If the foster parents lost custody of the child because the court granted the prospective adoptive parents' motion to change placement, then the foster parents would need to hire their own adoption agency in order to file their own petition. The foster parents would also need to secure their own consent to adoption if they wanted to file their own petition, which might be difficult to procure because the Department's termination of parental rights petition suggests that the location of the biological mother is unknown.

Because Heart of Adoptions would suffer material, irreparable harm from an improper denial of its petition to transfer placement and that harm could not be remedied on appeal following final judgment, certiorari jurisdiction lies. However, to be entitled to certiorari relief, Heart of Adoptions must also establish that the trial court departed from the essential requirements of the law by declining to change the child's placement.

## III.

A departure from the essential requirements of the law is more than simple legal error. *Dodgen v. Grijalva*, 331 So. 3d 679, 684 (Fla. 2021). It involves "a violation of a clearly established principle of law resulting in a miscarriage of justice." *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003).

## A.

Heart of Adoptions argues that the trial court failed to hold the hearing and enter an order on the motion for change of placement within the time required under section 63.082(6)(c). That section provides the following:

> *Absent good cause or mutual agreement of the parties*, the final hearing on the motion to intervene and the change of placement of the child *must* be held within 30 days after the

9

> filing of the motion, and a written final order *shall* be filed within 15 days after the hearing.

§ 63.082(6)(c) (emphasis added).

Neither the evidentiary hearing nor the written order was timely. However, Heart of Adoptions failed to preserve the timeliness issue below. During the hearing on the change of placement, when the court recounted the date on which the motion to intervene and for change of placement was filed, counsel for Heart of Adoptions did not object or otherwise mention the substantial delay.

Generally, it is not appropriate for an appellate court to consider an issue raised for the first time on appeal. *See Bair v. City of Clearwater*, 196 So. 3d 577, 585 (Fla. 2d DCA 2016). Unpreserved issues are reviewed for fundamental error. *See Terant v. Beltway Cap., LLC*, 147 So. 3d 1103, 1105 (Fla. 3d DCA 2014). A fundamental error is one that "involves an egregious deprivation of a constitutional right," *id.*, or one that "goes to the foundation of the case or . . . the merits of the cause of action," *Schroeder v. MTGLQ Invs., L.P.*, 290 So. 3d 93, 97 (Fla. 4th DCA 2020) (quoting *Yau v. IWDWarriors, Corp.*, 144 So. 3d 557, 560 (Fla. 1st DCA 2014)). No such error occurred here. The court held an *initial* hearing forty-eight days after Heart of Adoptions filed its motion to intervene and for change of placement. At that point, the child had already been sheltered with the foster parents for approximately fifteen months. The court orally granted the motion to intervene but denied the motion for change of placement without prejudice pending the evidentiary hearing. This delay did not amount to a fundamental error that is "basic to the judicial decision under review and equivalent to a denial of due process." *See State v. Johnson*, 616 So. 2d 1, 3 (Fla. 1993). The entry of the written order forty-eight days after the evidentiary

10

hearing similarly did not "go[] to the foundation of the case or . . . to the merits of the cause of action." *See Millen v. Millen*, 122 So. 3d 496, 498 (Fla. 3d DCA 2013) (citing *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970)).

Because Heart of Adoptions failed to preserve the issue of the timeliness of the proceedings below and because the deviations from the statutory time constraints do not amount to fundamental error, the trial court did not depart from the essential requirements of the law by failing to strictly adhere to the time requirements set forth in section 63.082(6)(c).

**B.**

Heart of Adoptions also contends that the trial court failed to give proper weight to the biological mother's fundamental liberty interest to direct the care, custody, and management of her child. "[I]n Florida, an individual's 'fundamental liberty interest in parenting . . . is specifically protected by our [state constitutional] privacy provision.' " *D.M.T. v. T.M.H.*, 129 So. 3d 320, 335 (Fla. 2013) (alteration in original) (quoting *Beagle v. Beagle*, 678 So. 2d 1271, 1275 (Fla. 1996)). "Although parents have a fundamental right to raise their children, and section 63.082(6)(e) provides the parents with the statutory right to select a prospective adoptive parent or parents for the child, that right is not absolute." *Guardian Ad Litem Program v. Campbell*, 348 So. 3d 1177, 1181–82 (Fla. 5th DCA 2022) (quoting *E.Q. v. Fla. Dep't of Child. & Fams.*, 208 So. 3d 1258, 1260 (Fla. 3d DCA 2017)). The parents' selection of the prospective adoptive parent is one of eight statutory factors that the trial court must consider in its determination. *See* § 63.082(6)(e)8 (directing the trial court to "consider and weigh all relevant factors including . . .

11

[t]he right of the parent to determine an appropriate placement for the child").

Parents' fundamental liberty interest in parenting their children is protected by the federal constitution as well as article I, section 23 of the Florida Constitution. *Beagle*, 678 So. 2d at 1275. However, "a parent's ability to participate in a placement process is purely statutory in nature and is secondary to the court's duty to determine the best interests of the child." *J.G. v. Dep't of Child. & Fams.*, 270 So. 3d 523, 525 (Fla. 5th DCA 2019).

> [W]hen considering a motion to transfer custody of a dependent child who is under the supervision of the Department, the trial court must consider the wishes of the natural parent or parents, if their parental rights have not been terminated, *and* weigh those wishes with the other seven factors articulated in section 63.082(6)(e), along with "all relevant factors."

*Campbell*, 348 So. 3d at 1182 (emphasis in original) (quoting § 63.082(6)(e)).

There is nothing in the record to suggest that the trial court failed to give due consideration to the fact that the biological mother executed the consent in favor of Heart of Adoptions as one consideration among all of the factors set forth in section 63.082(6)(e). The written consent that she signed does not list the prospective adoptive parents. Instead, it explicitly relinquishes her right to choose the adoptive parents, consenting to adoption by parents whose identities were admittedly "unknown to" her. In other words, the biological mother's exercise of her statutory right to determine an ultimate placement was by proxy, delegating the choice of a specific adoptive home to the adoption agency. The selection of a particular adoption agency itself could, depending on the circumstances, be considered one manner in which a parent

12

exercises her "right . . . to determine an appropriate placement for the child." *See* § 63.082(6)(e)8. However, what weight, if any, the trial court should give to that selection when the parent has waived the right to select a specific parental home by relinquishing it to a third party is not elucidated by Heart of Adoption's argument.

The trial court weighed this statutory factor along with the others. It did not depart from the essential requirements of the law by failing to give appropriate weight to the biological mother's interest in directing the care, custody, and management of her child when determining that the change of placement was not in the child's best interest.

## C.

Relying on *S.C.W.*, as well as *W.K. v. Department of Children & Families*, 230 So. 3d 905 (Fla. 4th DCA 2017), which relies on language in a footnote in the *S.C.W.* opinion, Heart of Adoptions argues that in applying the section 63.082(6)(e) factors, the trial court improperly compared the current placement with the prospective adoptive parents and determined that placement with the foster parents was "better" than placement with the prospective adoptive parents. This argument, however, misapprehends the court's order. Rather, after weighing the requisite statutory factors, the court determined that a change in placement was not in the child's best interests and properly denied the change in placement on that basis.

Section 63.082(6)(e) sets forth the factors that the trial court must consider "[i]n determining whether the best interests of the child are served by transferring the custody of the minor child to the prospective adoptive parent selected by the parent or adoption entity," requiring the trial court to

consider and weigh all relevant factors, including, but not limited to:

     1. The permanency offered;

     2. The established bonded relationship between the child and the current caregiver in any potential adoptive home in which the child has been residing;

     3. The stability of the potential adoptive home in which the child has been residing as well as the desirability of maintaining continuity of placement;

     4. The importance of maintaining sibling relationships, if possible;

     5. The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient maturity, understanding, and experience to express a preference;

     6. Whether a petition for termination of parental rights has been filed pursuant to s. 39.806(1)(f), (g), or (h);

     7. What is best for the child; and

     8. The right of the parent to determine an appropriate placement for the child.

§ 63.082(6)(e).

The trial court did that in this case. And it properly addressed each of the eight statutory factors. Among other things, the trial court considered the significant bond that the child had formed in the two years she has resided with her foster mother, who also wants to adopt her and whom she refers to as "mommy." The child also refers to the foster mother's family members as her own "sister," "grandparents," and "cousins." *See E.Q.*, 208 So. 3d at 1261 (noting that the children had resided in a stable placement with their pre-adoptive foster parents with whom they had bonded, calling them "mommy" and "papi"). The child

14

informed the court that she wanted to live with her mommy, and the court noted that case management and the child's attorney ad litem also believed that the child should stay with her foster mother as opposed to changing placement. The court indicated that "the child appears to be happy, safe, cared for, and provided for in her current placement, with a caregiver she considers a mother." Against that, the court found that the prospective adoptive parents are near-total strangers to the child and that her current placement "is the only family that [the child] knows and recognizes." Thus, although finding—albeit with some reluctance—that the birth mother's choice of placement weighed in favor of transferring custody of the child to the prospective adoptive parents, the court ultimately concluded not merely that the status quo was "better" but that "removing the child from [her current placement] to place her in an unfamiliar home, with individuals that she does not know or remember, would be extremely detrimental to her mental and emotional wellbeing."

In short, the trial court did exactly as the statute directed. We therefore conclude that it did not err—let alone depart from the essential requirements of the law—by denying Heart of Adoption's motion to change placement.

Petition denied.

LaROSE and ROTHSTEIN-YOUAKIM, JJ., Concur.
ATKINSON, J., Concurs with opinion.

ATKINSON, Judge, Concurring.

I fully join the majority opinion. I also write separately to address confusion regarding language in a recorded opinion of this court that became the subject of the parties' arguments in this appeal.

Heart of Adoptions argues that the trial court improperly determined that placement with the foster parents was better than placement with the prospective adoptive parents. However, this argument is based on an incorrect assertion that the applicable statute does not allow the court to compare the home of the prospective adoptive parent seeking the transfer with any other potential adoptive home. The language of the statute does not support such a categorical prohibition; to the contrary, the statute *requires* the court to assess aspects of any potential adoptive home in which the child is currently residing when determining whether to transfer the child to the home of the prospective adoptive parent selected by the biological parent or adoption agency.

Section 63.082(6)(e) includes an inexhaustive list of factors upon which the trial court must base its determination of "whether the best interests of the child are served by transferring the custody of the minor child *to* the prospective adoptive parent selected by the parent or adoption entity." *See* § 63.082(6)(e) (emphasis added). The trial court must

> consider and weigh all relevant factors, including, but not limited to:
>
> 1. The permanency offered;
>
> 2. The established bonded relationship between the child and the *current* caregiver in any potential adoptive home *in which the child has been residing*;
>
> 3. The stability of the potential adoptive home *in which the child has been residing* as well as the desirability of maintaining continuity of placement;
>
> 4. The importance of maintaining sibling relationships, if possible;

16

5. The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient maturity, understanding, and experience to express a preference;

6. Whether a petition for termination of parental rights has been filed pursuant to s. 39.806(1)(f), (g), or (h);

7. What is best for the child; and

8. The right of the parent to determine an appropriate placement for the child.

§ 63.082(6)(e) (emphasis added). The requirement that the trial court consider both "[t]he established bonded relationship between the child and the *current* caregiver in any potential adoptive home in which the child has been residing" and "[t]he stability of the potential adoptive home in which the child *has been residing*" as well as "the desirability of maintaining continuity of placement"—in addition to the potential to disrupt permanency and sibling relationships that might rely on continuity of placement—make it inescapable that a current placement would be "weigh[ed]" against placement in the home of the adoptive parental home to which the adoption agency is seeking a transfer. *See id.* In other words, the language of the statute requires the court to assess whether transfer to the prospective adoptive parents is the best choice in light of the child's current placement, making a comparison an appropriate part of the court's best-interest analysis.

Heart of Adoptions misplaces reliance upon *Adoption Miracles, LLC v. S.C.W. (In re S.N.W.)*, 912 So. 2d 368 (Fla. 2d DCA 2005), as well as *W.K. v. Department of Children & Families*, 230 So. 3d 905 (Fla. 4th DCA 2017), which relies on language in a footnote in the *S.C.W.* opinion, to argue that the trial court improperly compared the child's placement with her foster family to the placement with the prospective adoptive

17

parents.  Heart of Adoptions contends that those cases support a conclusion that the trial court is not permitted to determine whether the change of placement "is the best choice . . . in light of other alternatives." *See W.K.*, 230 So. 3d at 908 (quoting *S.C.W.*, 912 So. 2d at 373 n.4). However, such a proposition is based on a reading of nonbinding dicta in this court's *S.C.W.* opinion, and the conclusion the Fourth District derived is in derogation of the language of the applicable statute.

In *S.C.W.*, this court indicated that in determining whether to grant an adoption agency's motion to intervene and to transfer the child to the custody of the prospective adoptive parents pursuant to section 63.082, a trial court is "prevented from comparing the birth parents' choice of prospective adoptive parents with other potential placements that the court or the Department might choose for the child."  *S.C.W.*, 912 So. 2d at 373 n.4.  However, the court relied on section 39.810, Florida Statutes (2004), which provided that the court consider the manifest best interests of the child and that "[t]his consideration shall not include a comparison between the attributes *of the parents* and those of any persons providing a present or potential placement for the child."  *See id.* (emphasis added) (quoting § 39.810).  That inapplicable clause describes the standard that a court must utilize "[i]n a hearing on a petition for termination of parental rights," *see* § 39.810—not a motion to intervene and transfer custody under section 63.082, the terms of which, as explained above, *compel* a comparative analysis between the child's current placement in a prospective adoptive home and the home of the prospective adoptive parents to which the adoption agency seeks to transfer the child.

It is not necessary for this court to assess whether the language in *S.C.W.* supports the conclusion reached by Heart of Adoptions and the

18

Fourth District that section 63.082 prohibits a trial court from drawing a comparison between the prospective adoptive home and an existing placement in another prospective adoptive home.  That is because we are not bound by the *S.C.W.* court's interpretation of section 63.082(6) because it is dicta, a "statement of law in a judicial opinion that is not a holding." *Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020); *accord Parrish v. State*, 331 So. 3d 161, 166 (Fla. 4th DCA 2021) ("[A] remark made in pronouncing an opinion and which concerns some rule, principle or application of law not necessarily involved in the case or essential to its determination is obiter dictum, pure and simple." (quoting *Bunn v. Bunn*, 311 So. 2d 387, 389 (Fla. 4th DCA 1975))).  In *S.C.W.*, the trial court did not determine whether the transfer of custody was appropriate; it had no reason to do so because it denied the adoption agency's motion to intervene after setting aside the birth mother's consent.  As such, in reviewing and reversing that order, the issue of a transfer of custody to a prospective adoptive parent under section 63.082(6) was not before this court, rendering any pronouncement regarding comparison of placements as it relates to a transfer of custody inessential to the case's holding and therefore nonbinding dicta.  *See S.C.W.*, 912 So. 2d at 373 n.4.  Moreover, because the reversal in *S.C.W.* was premised solely on the erroneousness of the setting aside of the birth mother's consent, the discussion of the " 'best interest' determination" itself was not related to the court's ultimate disposition and was likewise dicta.  *See id.*

The Fifth District's opinion in *Guardian Ad Litem Program v. Campbell*, 348 So. 3d 1177 (Fla. 5th DCA 2022), cited by the Department, distinguished what it believed to be *S.C.W.*'s interpretation

19

of section 63.082(6) by explaining that *S.C.W.* had relied upon a prior version of that statute that did not include the "weighing" language:

> In determining whether the best interests of the child will be served by transferring the custody of the minor child to the prospective adoptive parent selected by the parent, the court shall consider the rights of the parent to determine an appropriate placement for the child, the permanency offered, the child's bonding with any potential adoptive home that the child has been residing in, and the importance of maintaining sibling relationships, if possible.

*Campbell*, 348 So. 3d at 1181 n.2, 1182 n.4 (quoting § 63.082(6)(e), Fla. Stat. (2015)).  The court in *Campbell* draws a distinction between the two versions of section 63.082(6), explaining that the former version of the statute contained a nonexhaustive list of factors whereas the new version requires that the court consider and weigh all relevant factors. *Campbell*, 348 So. 3d at 1182 ("The current version of section 63.082(6) is clear that when considering a motion to transfer custody of a dependent child who is under the supervision of the Department, the trial court must consider the wishes of the natural parent or parents, if their parental rights have not been terminated, *and* weigh those wishes with the other seven factors articulated in section 63.082(6)(e), along with 'all relevant factors.' " (quoting § 63.082(6)(e))).

The distinction identified by the Fifth District in *Campbell* is not compelling.  Both the prior and current versions of the statute contain materially similar language that references an alternative adoptive home and requires the trial court to assess the child's placement in each home. *Compare* § 63.082(6)(d), Fla. Stat. (2004) ("In determining whether the best interest of the child will be served by transferring the custody of the minor child to the prospective adoptive parent selected by the birth parent, the court shall give consideration to the rights of the birth parent to determine an appropriate placement for the child, the permanency

20

offered, the child's bonding with any potential adoptive home that the child has been residing in, and the importance of maintaining sibling relationships, if possible."), *with* § 63.082(6)(e), Fla. Stat. (2016) ("In determining whether the best interests of the child are served by transferring the custody of the minor child to the prospective adoptive parent selected by the parent or adoption entity, the court shall consider and weigh all relevant factors, including, but not limited to: . . . [t]he established bonded relationship between the child and the current caregiver in any potential adoptive home in which the child has been residing . . . [and] [t]he stability of the potential adoptive home in which the child has been residing as well as the desirability of maintaining continuity of placement . . . ."). Under either version, the court is required to consider the child's current placement in its determination as to whether transfer of the child to the prospective adoptive parent is in the child's best interests. As explained in the majority opinion, the trial court did just that, properly addressing each of the statutory factors—including those that bear upon the advantages of the child's current placement in the potential adoptive home in which the child has been residing.

The Fourth District's *W.K.* opinion quotes this court's *S.C.W.* opinion for the proposition that the "best-interest" determination is confined to an analysis merely of the appropriateness of the parents' choice of adoptive parents and whether it protects the well-being of the child and may not include an evaluation of whether the parent's choice is the best one "in light of other alternatives." *See W.K.*, 230 So. 3d at 908. Regardless of whether the Fourth District's proposition is justifiably based on a reasonable interpretation of the dicta in *S.C.W.* construing

21

section 63.082, it is faulty because it is not in accord with the language of the statute itself.

––––––––––––––––––––––––––

Opinion subject to revision prior to official publication.